# MARTIN P. STAMM et al., Appellants, v. CITY OF AL-BUQUERQUE, Appellee.

### SYLLABUS BY THE COURT.

1.  STATUTE OF LIMITATIONS—PRESCRIPTION—PRIVATE NUISANCE.—One claiming by prescription the right to maintain a private nuisance assumes the burden of showing that for the full period of the statute of limitations he has violated the law to the extent and with the results charged against him, with the practical acquiescence of the person injured, and to the extent that during the whole time an action would lie against him.

2.  APPELLATE PRACTICE—REVIEW OF FINDINGS BY TRIAL COURT.—Where there is no evidence to support the findings of the lower court, they may be reviewed by this court.

3.  PRIVATE NUISANCE—ABATEMENT—GIST OF ACTION.—In a suit for injunction to abate a private nuisance which is also a public nuisance, the gist of the action is the injury to the plaintiff, and it is immaterial, where no prescriptive right to maintain the nuisance is made out, to show the injury to the public or to individuals similarly situated to plaintiff.

*Appeal* from the District Court of Bernalillo County, Second Judicial District.   Reversed and remanded with directions.

Statement of the case by the court.

This is a suit brought by appellants in the court below against appellee for a mandatory injunction directing the abatement of an alleged nuisance. It appears that appellee maintains a ditch which runs from the northeastern to the southwestern part of the city through a populous business and residence portion thereof; that in its course it passes under several streets and blocks of business and residence buildings and crosses the residence lots of appellants; that the ditch was originally constructed prior to the purchase by appellants of

their residence lots which are, and for more than ten years prior to the institution of this suit have been, charged with the easement of carrying said ditch through the same.

Appellants allege that said ditch has become partly filled with sediment, trash and refuse from the factories, stables and other buildings along its line, so that the stench and malarial fumes therefrom render appellants' dwelling unwholesome and uncomfortable for habitation. They further allege that in 1891 or 1892 appellee took steps to deepen and widen said ditch and claimed the right to go upon appellant's premises for that purpose, which right appellants resisted; that thereupon appellee agreed to construct a substantial flume through said premises and keep the same in repair, if appellants would consent to have the same done; that said license was given and said flume constructed accordingly; but that in violation of said agreement, appellee has failed to keep said flume in repair and has allowed same to decay and fall in so as to cause water to stand in stagnant pools on appellants' premises. They further allege that appellee now proposes to enter upon their premises and to widen and deepen said ditch and to let the same stand as an open ditch which would be a menace to the health, comfort and convenience of appellants and their family.

Appellee admits that said ditch has become partly filled with sediment, but denies that the same is a nuisance to appellants, as charged, or that trash or refuse from the factories, stables or other structures along its line are permitted to accumulate therein; denies that it ever agreed to put in and maintain said flume, or that it ever did do so, and avers that same was constructed before appellants acquired the premises, and admits that same has fallen into decay and that it has become necessary to remove same to prevent stagnant water from accumulating on appellants' premises and which it proposes to do; denies that it has resolved to widen and deepen said ditch, but avers its intention, unless restrained, to clean said ditch and leave the same an open ditch through appellant's premises.

Evidence was introduced showing the filthy condition of

the ditch, the giving off by it of offensive odors along its entire length through the settled portion of the city, and the private nuisance to appellants was fully established, there being no evidence to the contrary.  Appellants showed that the allegations of the bill in regard to the construction of the flume by their consent and license were true and there was no evidence to the contrary further than some general statements that the ditch has been maintained in practically its present condition for more than ten years.   There was much controversy at the trial as to whether the question of the ditch being a common or public nuisance was within the issues, but we deem the same not material to this inquiry.

ALONZO B. McMILLEN AND CHILDERS & DOBSON for appellants.

1.  A nuisance, if in a public place where people pass and repass and have a lawful right to congregate, or where members of the public are likely to come within its range, is a public nuisance; and if the alleged nuisance produces material annoyance, inconvenience, discomfort or injury, it is punishable as such.   Wood on Nuisances, sec. 20 and ca. ci.; 16 Am. & Ang. Ency. of Law, p. 927.

2.  A private individual may sustain a suit to abate a public nuisance if that individual has suffered a special and particular damage therefrom, different from that which is common to all.   Wood on Nuisances, secs. 727, 671, 680 and ca. ci.; 16 Am. and Eng. Ency. of Law, p. 995 and ca. ci.; Cooley on Torts, 612 to 614; Mills v. Hall, 9 Wend. 315, 24 Am. Dec. 631; Kellog v. Thompson, 66 N. Y. 88; Rhodes v. Whitehead, 27 Tex. 304; Veazie v. Dwinel, 50 Me. 479; Weld v. Homby, 7 East 195; Summons v. Cornell, 1 R. I. 519; Knox v. Chaloner, 42 Me. 150; Renwick v. Morris, 3 Hill, 621; Lewis v. Stein, 16 Ala. 214; Stoughton v. Baker, 4 Mass. 422; Arundell v. McCullock, 10 Mass. 150; Cooke v. Forbes, L. R. Eq. 166; Crump v. Lambert, L. R. 3 Eq. 409; Lansing v. Smith, 4 Wend. (N. Y.) 10; Francis v. Schoelkopf, 53 N. Y. 152; Wesson v. Washburn Iron Co., 13 Allen, 95; Ross

v. Butler, 19 N. J. Eq. 294; Ottawa Gas Light Co. v. Thompson, 39 Ill. 508; Tipping v. St. Helen Smelting Co., E. C. L. 608; Story v. Hammond, 4 Ham. (Ohio) 376.

If a public nuisance extends to one's dwelling, or place of business, so as to render its occupancy materially uncomfortable, a private action will lie to abate it.

Wood on Nuisances says:

"So, too, in the case of a noxious trade upon a highway, but away from habitations, so long as every person sustains a common injury therefrom as by being annoyed by its offensive and unwholesome smells, it is a purely public injury; but if its effect extend to the dwellings or places of business of any persons, to such an extent as to render their occupancy materially uncomfortable, then it becomes a private nuisance to those whose dwellings or places of business are so affected, and they may have their action therefor, although there are many persons who are thus affected, and the result will be to promote a multitude of suits." Wood on Nuisances, sec. 691.

3. No one can acquire the right by prescription to maintain a public nuisance, and it makes no difference whether the suit to abate be at the instance of the public or of a private individual who is entitled to sue.

By section 2402, Compiled Laws of 1897, the defendant city is given the following powers:

Subsection 45. "To declare what shall be a nuisance and to abate the same, and to impose fines upon parties who may create, continue or suffer nuisances to exist."

Subsection 54. "To compel the owner of any grocery, cellar, soap or tallow candlery, tannery, stable, pig-sty, privy, or sewer, or other unwholesome or nauseous house or place, to cleanse, abate or remove the same, and to regulate the location thereof."

And a city authorized to abate a nuisance is liable for failure to exercise that power. Chalker v. City of Richmond, 29 Am. St. Rep. 730; Kiley v. Kansas, 29 Mo. 102; 33 Am. Rep. 491; Parker v. Mayor of Macon, 39 G. 729; 99 Am.

Dec. 486; Noble v. City of Richmond, 31 Gratt. 271; 31 Am. Rep. 736; Orme v. City of Richmond, 79 V. 86; Saulsbury v. Village of Ithaca, 94 N. Y. 27; 46 Am. Rep. 122; City of Joliet v. Verley, 35 Ill. 58; 85 Am. Dec. 342; City of Bloomington v. Bay, 42 Ill. 503; Clark v. Town of Epworth, 56 Ia. 462; Ashley v. Port Huron, 35 Mich. 296; 24 Am. Rep. 552; Logansport v. Wright, 25 Ind. 512; Emery v. Lowell, 104 Mass. 13; Clayburgh v. City of Chicago, 25 Ill. 535; 79 Am. Dec. 346; Springfield v. LeClaire, 49 Ill. 476; Kranx v. Mayor of Baltimore, 64 Md. 491; Houfe v. Town of Fulton, 34 Wis. 608; 17 Am. Rep. 462.

The only defense that they have to offer is that the ditch in question has been the foul, filthy, offensive, disease-breeding nuisance proved by plaintiffs, for more than ten years.

Their argument is that because they have succeeded in maintaining this nuisance, and polluting the health of the people for more than ten years, they have acquired the right to do so perpetually.

The principle contended for by plaintiffs is admirably illustrated by the leading case of Cates v. the Mayor and Aldermen of the City of New York, 7 Cow. 585. The facts of that case were as follows: A law was enacted by the Legislature of the state on the ninth of March, 1813, which gave to the city government the power to pass ordinances regulating, and if necessary, preventing the interment of dead bodies within the city; and a penalty of $250 was authorized to be imposed for the violation of the prohibition. On the seventh of October, 1823, an ordinance was adopted, forbidding interments or the depositing of dead bodies in vaults in the city south of a designated line. A penalty was prescribed for its violation. The action was brought to recover the penalty for depositing a dead body in a vault in Trinity churchyard. A plea was interposed setting forth that the locus in quo was granted by the King of Great Britain, on the sixth day of May, 1697, to a corporation by the name of the "Rector and inhabitants of the city of New York in communion with the Protestant Episcopal church of England," and their suc-

cessors forever, as and for a churchyard and burying place, with the rights, fees, etc.; that immediately after the grant the land was appropriated, and thence forward was used as and for a cemetery for the interment of dead bodies; that the rector and wardens of Trinity church were the same corporation; and that the body in question was deposited in the vault in the churchyard by the license of that corporation. A general demurrer was filed, and the case elaborately argued.

The validity of the ordinance was sustained. The court held that:

"The act under which it was passed was not unconstitutional, either as impairing the obligation of contracts, or taking property for public use without compensation, but stands on the police power to make regulations in respect to nuisances." It was said, "Every right, from absolute ownership in property down to a mere easement, is purchased and holden subject to the restriction that it shall be so exercised as not to injure others. Though at the time it be remote and inoffensive, the purchaser is bound to know at his peril that it may become otherwise by the residence of many people in its vicinity, and that it must yield to by-laws and other regular remedies for the suppression of nuisances."

Another leading case is that of Northwestern Fertilizing Co. v. Hyde Park, 97 U. S. 659. The plaintiff in that case was incorporated by a special act of the State of Illinois, March 8, 1867, to have a continued succession and existence for fifty years for the purpose of establishing and maintaining chemical works for the purpose and manufacturing and converting dead animals, and other animal matter into an agricultural fertilizer, etc. The act also established the place where said works were to be located, which, at that time, was in a swampy and uninhabited tract of land about three miles from Chicago. The rapid growth of the city soon encroached on the above location with the result of the organization of the village of Hyde Park. By act of the State Legislature the village was given power to "define or abate nuisances which are or may be injurious to the public health."

In pursuance of this power the village passed an ordinance prohibiting the transportation of offal through the streets or the carrying on of any unwholesome or offensive business. The suit of the plaintiff in that case was to enjoin the enforcement of said ordinance.

After reviewing the case of Coates v. Mayor, etc. *supra,* the court, by Justice Swayne, says:

"In such cases, prescription, whatever the length of time, has no application.  Every day's continuance is a new offense, and it is no justification that the party complaining came voluntarily within its reach.   Pure air and the comfortable enjoyment of property are as much rights belonging to it, as the right of possession and occupancy.  If population, where there was none before, approaches a nuisance, it is the duty of those liable at once to put an end to it."   Northwestern Fertilizing Co. v. Hyde Park, 97 U. S. 659; See also Wood on Nuisances, sec. 727; 16 Am. and Eng. Ency. of Law, p. 995, where almost one hundred cases are cited in support of this proposition.

· The same rule applies where the public nuisance works private injury and a prescriptive right can not be urged against a private action for such injury.   16 Am. and Eng. Ency. of Law, p. 995, and cases cited; Wood on Nuisances, sec. 727, et seq.; Cooley on Torts, pp. 612 to 614; Mills v. Hall, 9 Wend. 315; 24 Am. Dec. 631; Kellogg v. Thompson, 66 N. Y. 88; Rhodes v. Whitehead, 27 Tex. 304; Veazie v. Dwinel, 50 Me. 479; Weld v. Hornby, 7 East. 195; Commonwealth v. Upton, 6 Gray. 473; Summons v. Cornell, 1 R. I. 519; Knox v. Chaloner, 42 Me. 150; Renwick v. Morris, 3 Hill, 621; Lewis v. Stein, 16 Ala. 214; Stoughton v. Baker, 4 Mass. 522; Arundel v. McColloch, 10 Mass. 150; Sims v. City of Frankfort, 79 Ind. 45.

The case of Mills v. Hall, supra, was an action for a nuisance created by the erection and maintenance of a dam across the outlet of Lake Paradox, corrupting the atmosphere and affecting the health of the plaintiff and his family, the defendants relied on the fact that the dam in its present condition had

been maintained for more than twenty years, but the court (Sutherland, J.) said on this point:

"There is no such thing as a prescriptive right or any other right to maintain a public nuisance. Admitting that the defendant's dam had been erected and maintained more than twenty years, and that during the whole of that period it has rendered the adjacent country unhealthy, such length of time can be no defense to a proceeding on the part of the public to abate it, or to an action by any individual for the special and particular injury which he may have suffered from it. If the defendant have for twenty years been permitted to overflow the plaintiff's land with their mill pond, so far as the injury to the land is concerned they have by that length of possession acquired a right to use it in that manner, and are not responsible in damages to the plaintiff. So a a man may overflow his own land; but if such overflow spreads disease an death through the neighborhood, it may be abated, and he must respond in damages for the special injury which any individual may have sustained from it; and it would seem very absurd to contend that the defendants in a case like this would have greater rights or immunities."

In Commonwealth v. Upton, 6 Gray, 473, the court says:

"But even if the prosecution and continuance of his business for more than twenty years, before any buildings were erected or highways located in the neighborhood of his slaughter house, could be regarded as the assertion and maintenance of a claim adverse to the law and public right, it could so be considered only upon the ground that it was, during all that time, a nuisance subject to be suppressed and abated. And of this he could not avail himself in defense of the present indictment. For it is a positive rule of the law, as reasonable as it is firmly established that no length of time will legitimate a nuisance, or enable a party to prescribe for its continuance. Rosc. Crim. Ev. (2nd Ed.) 741; 1 Russell on Crimes (7th Am. Ed.) 330; People v. Cunningham, 1 Denio, 536. The public health, the welfare and safety of the community, are matters of paramount importance, to which all the pursuits,

occupations and employments of individuals, inconsistent with their preservation, must yield. It is, therefore, immaterial so far as the government is concerned, in the administration of the law for the general welfare, how long a noxious practice may have prevailed, or illegal acts been persisted in. Easements may be created in lands, and the rights of individuals may be wholly changed by adverse use and enjoyment, if it is sufficiently protracted; but lapse of time does not equally affect the rights of the state. Thus it has been held that the continuance of a nuisance, caused by the overflow of lands by means of a mill dam for twenty years, although supposed to confer a right to the land overflowed, is no defense to a proceeding on the part of the public to abate it, or even of an individual to whom it was the occasion of special and peculiar injury. Mills v. Hall, 9 Wend. 315."

Judge Cooley on the same subject says:

"And in any case of a public nuisance from which individual injury was received, it would seem anomalous—to say the least—that a portion of the sufferers should be at liberty to bring private suits and another portion not, or that a land owner who had long lived near it should be precluded, but might sell to another who could come in with ample right. On the whole the better doctrine would seem to be, that the acquisition of rights by prescription can have nothing to do with the case of public nuisances, either when the state or when individuals complain of them."

4. A municipal corporation has no more right to license or maintain a nuisance than an individual. Dillon on Municipal Corporations, 378; Wood on Nuisances, sec. 74, 748, 749; Vol. 10 Am. and Eng. Ency. of Law (2nd Ed.), p. 245, and cases cited; Haag v. Co. Com., 60 Ind. 511; Petersburg v. Applegate, 28 Grat. 321; Brayton v. Fall River, 113 Mass. 218; Franklin Wharf Co. v. Portland, 67 Me. 46; Harper v. Milwaukee, 30 Wis. 365; Hannibal v. Richards, 82 Mo. 330; Chalkey v. City of Richmond, 88 Va. 402; 29 Am. St. R. 730.

Nor is the plea that the nuisance is necessary or convenient available. The court will not balance conveniences.

Works v. Junction Ry. Co., 5 McLean, 425; State v. Kaster, 35 Ia. 221; Seacord v. People, 121 Ill. 623; Atty.-General v. Leeds, 39 L. J., Ch. 254; Rex v. Ward, 4 Ad. and El. 384; Rex v. Tindall, 6 Ad. and El. 143; Reg. v. Train, 2 B. and S. 640; Respublica v. Caldwell, 1 Dall. 150; Hart v. Mayor, etc., of Albany, 9 Wend. 571; Ellis v. State, 7 Blackf. 534; Com. v. Upton, 6 Gray, 473; Brady v. Weeks, 3 Barb. 157; Tipping v. W. Helen Smelting Co., L. R., 1 Eq. 66.

5. When the cause of injury is continuing equity will interfere by injunction. B. and P. Ry. Co. v. 5th Baptist Church, 108 U. S. 317.

6. The court should enjoin the useless expense threatened as well as to abate the nuisance because the ditch cannot be kept healthful without removing buildings erected over it and a tax payer may maintain a suit of this nature. Crompton v. Zabriskie, 101 U. S. 601; Dillon on Municipal Corporations, 914, 916, 917.

7. The misappropriation of funds for illegal use, although paid for in cash, will subject the taxpayer to additional tax for legal purposes and, therefore, should be enjoined. Dillon on Municipal Corporations, Sec. 917; New London v. Brainard, 22 Conn., 552; Hamey v. Indianapolis, 32 Ind. 244; Liberty Bell 23, Fed., 846.

HORTON MOORE for appellee.

1. Land may be dedicated to public use or charged with an easement or servitude without deed or writing, by merely platting it off, or by prescription and adverse possession. Cinn v. White, 31 U. S. 434; Morgan v. R. R. Co., 96 U. S. 416; Cook v. C. B. & Q., 40 Iowa, 451; Brooks, Jr., v. City of Topeka, 8 Pac. 392; Shields v. Titus, 22 N. E. 717; Deluge v. Broadway, 25 N. J. Eq. 70; Seymour v. Louis, 13 N. J. Eq. 439.

2. An easement, granted or acquired, upon the premises of another, for a specific purpose, carries with it the right of ingress and egress, to and from, said premises, for

whatever purpose is necessary, to subject same to the easement granted or acquired.

3. In order to sustain an action to abate a public nuisance, at the suit of an individual, it is not sufficient to show an injury or damage merely different in degree from that sustained by those that come within its influence, but must show a special and particular difference in genere. Wood on Nuisances, Sec. 839; 16 Am. & Eng. Ency. of Law, p. 971; Shaubut v. St. Paul, etc., R. Co., 21 Minn. 502; Barnum v. Minn. Trans. R. Co., 33 Minn. 365; Caney v. Brooks, 1 Hill L. (S. Car.) 365; South Carolina Steamboat Co. v. South Carolina R. Co., 30 S. Car. 539.

4. The city by its answer claimed no right by prescription or otherwise to maintain a public or private nuisance. It claimed the right to maintain the ditch.

Counsel for appellants, in their brief, devote the third paragraph of points and authorities (pages 15-23, inclusive) to a discussion of prescriptive right to maintain a nuisance. An examination of the transcript of record will show, that no such proposition was, in any manner, at issue in the court below, or in the mind of the court or counsel for defendant, but merely intruded itself into the record, through objections by counsel for appellants, who had either not advised themselves of the issues in the case or had misconceived the object of evidence offered upon trial, for either of which appellee disclaims responsibility here and counsel did not consider it their duty to advise them in the court below. Appellants sought relief in this case, which, if granted to the full extent demanded, would have been a decree requiring the city to fill up the ditch and cease to maintain same as a water way or drain. They sought to prevent the city from entering upon their lands to open and clean out the ditch. The city sought to show by its answer that it was the owner of an easement across the lands of appellants and had a lawful right to maintain a ditch across same. It did not and does not claim the right to maintain a public or private nuisance by prescription

or in any other manner, nor did the court below hold any such absurd proposition.

The court found that the ditch as maintained by the city is not a private nuisance and has found as a matter of law that the city has a right to maintain it as it has heretofore maintained it.

If it is a public nuisance it is the business of the public prosecutors to see that it is abated, and the appellants' remedy is by appeal to the grand jury and the public prosecutors and not a court of equity.

It is difficult to see the application of the 7th Cowan case or the case in 97 U. S. 659, cited by counsel for appellants, unless it is intended to be contended that Mr. Stamm, in the exercise of his police power, had the right to issue an edict to the effect that the ditch in question must be closed up, and then resort to a court of equity to carry his edict into execution.

The distinction sought to be made by the city is clearly pointed out in the case of Mills v. Hall, quoted from at length in appellants' brief.

5. Mode of abatement in the discretion of the city council.

If the ditch is a public nuisance it is not contended that it is so per se, but has become so because of the refuse, trash, etc., lodged in it.

The city, in its answer admitted that it was not altogether in sanitary condition, but alleged that its city council had resolved to clean it out. If the city has authority as counsel in their brief contended, to abate a public nuisance, a court of equity will not interfere with their discretion as to the mode of abatement, unless it is made to appear that its council is about to proceed from fraudulent motives. It is not in the province of a court of equity to question the soundness of their discretion. 2 Beach, Sec. 1024, 1004, ca. ci.; 1 Dillon. Sec. 379; Durham v. City of New Britain, 55 Conn. 378; Philadelphia v. Providence Trust Co., 132 Pa. St. 224; Kennedy v. Board of Health, 2 Pa. St. 366.

6. This court will not examine the sufficiency of the evidence to support the findings of the trial court.

The trial court found that the allegations of the amended complaint were not sustained by the evidence, and that the allegations of the affirmative defense contained in the answer were sustained by the evidence, and dismissed the complaint.

The sufficiency of the evidence to support these findings is not open to review in this court. The only question here is, was there evidence in support of the findings of the court.

The findings of the court in this case on this review are entitled to the same weight as the verdict of a jury.

It is well established that in cases tried by the court without the intervention of a jury a reversal cannot be had for the admission of improper evidence, because the conclusive presumption is that the court knows what evidence is proper and what improper, and will only consider the proper evidence. Admission of evidence, which on a trial before a jury might demand a reversal, would, in a trial before the court alone, be a harmless error. Grason v. Lynch, 163 U. S. 468; 7 N. M. 26; Idaho & Oregon Land Co. v. Bradbury, 122 U. S. 509; San Pedro, etc., Co. v. United States, 146 U. S. 120; Smith v. Gale, 144 U. S. 509; Zanz v. Stover, 2 N. M. 29; Torlina v. Trorlicht, 5 N. M. 148.

In cases of equity the rule is universal.

PARKER, J.—1. The first proposition presented by this record is as to the acquisition of a right to maintain a private nuisance by prescription. Theoretically, the right may be thus acquired, but practically there are very few cases in which it can be established. Wood's Law of Nuisances, (2nd Ed.) Sec. 712. Thus one claiming such a right assumes the burden of showing that for the full period of the statute of limitations he has asserted and exercised the right to violate the law to the extent and with the re-

sults charged and proved against him (Id. Sec. 713) with the practical acquiescence of the person injured (Id. Sec. 718), and to the extent that during the whole time an action would lie against him (Id. Sec. 715, 716). Applying these principles to the case at bar, it seems clear that no prescriptive right to maintain a private nuisance has been made out. The most that is claimed by appellee is that it has a prescriptive right to maintain the ditch in question over the premises of appellants, and that it has been maintained in practically its present condition for more than ten years. On the other hand appellants show that in 1891 or 1892 upon their refusal of permission to go upon their premises to enlarge said ditch, appellee with their permission, constructed a covered flume through which the ditch was carried across said premises, and that after said flume decayed and fell in. they notified appellee to repair same, which it failed to do; that the proposed tearing out of the flume and leaving of the ditch open will greatly increase and aggravate the injury. There is no proof that the nuisance in its present or proposed form, or otherwise, has existed for more than ten years. It will thus be seen that the proofs fail in every particular to establish a prescriptive right to maintain the ditch so as to be a nuisance to appellants.

STATUTE of limitations: prescription: private nuisance.

2. It appears from the evidence that a private nuisance to appellants is made out, and there is no evidence to the contrary. This case involves no discussion of the effect of findings by a trial court upon conflicting evidence, for we find no evidence nor any attempt to produce any in the record to dispute that of appellants on this subject. There was manifest error, therefore, in the finding of the court that the allegations of the complaint on this subject were not sustained.

APPELLATE practice: review of finding by trial court.

3. As before stated, there was much controversy in the court below whether the question as to the ditch be-

ing a public nuisance was in issue, and this was made the basis of most of the objec-

PRIVATE nui-
sance: abate-
ment: gist of
action.

tions on the part of appellee to the introduction of testimony. But it will be seen that the true distinctions were lost sight of. The gist of this action, as it would be in an action for damages, is the injury to the appellants. The public right of the community through which the ditch runs, the private right of the inhabitants similarly situated to the appellants, and the rights of appellants have nothing to do with each other. Wood's Law of Nuisances, Secs. 676, 681. It is a matter of no concern to appellants in this proceeding that the public generally, or the inhabitants along the line of the ditch in particular, suffer injuries from the same, so long as the injury to appellants be removed. It was, therefore, perfectly immaterial in this case for the appellants to show that the ditch was a menace to the health of the public generally, or that other persons living along its line suffered injuries similar to those experienced by them. We think the court properly excluded this testimony. We do not wish to be understood as denying that in a proper case of this kind it may become material to show that a private nuisance is also a public nuisance, so that the prescriptive right to maintain the nuisance may be thus defeated. But no such necessity arose in this case. It was, however, material for appellants to show, if they could, that the ditch, by reason of its character and situation was inherently a nuisance and incapable of maintenance by appellee so as not to be a nuisance to appellants. The question was not whether it would be kept in a harmless condition by the city, but whether it could be so kept with reference to appellants. We have examined the testimony and the assignments of error, and find no offer of such testimony which was excluded, and there was much testimony to the effect that with proper care as to cleanliness the ditch could be maintained without danger or offense to the inhabitants along its line, including appellants.

The court passed upon this testimony and found against appellants, and there is no reason to disturb his finding.

For the reasons stated the cause will be reversed and remanded with instructions to set aside the decree of dismissal and enter a decree in favor of appellants, prohibiting the maintenance of said ditch over appellants' premises in any manner other than by a covered flume of a size not to exceed the present flume, and from otherwise so maintaining the same as to continue the nuisance complained of, and it is so ordered.

Mills, C. J., and McFie, J., concur; Leland and Crumpacker, JJ., did not participate in this decision.

---

[867.   August 23, 1900.]

### SYLLABUS BY THE COURT.