KENDALL-SMITH COMPANY, APPELLEE, v. LANCASTER COUNTY, APPELLANT.

FILED JUNE 11, 1909.   No. 15,687.

1. **Highways:** DEDICATION. "Where adjoining landowners place fences and plant trees along the line between their lands in such a way as to leave an intervening space for public travel, and with the

intention that it be used for that purpose, and the public enter upon and use the intervening space as a highway and continue in such use and enjoyment thereof for almost 20 years, it will be regarded as a highway by dedication." *Cassidy v. Sullivan*, 75 Neb. 847.

2. ———: PRESCRIPTION. Deviations of 20 feet from the line of public travel to avoid mud, pools, obstructions or encroachments will not necessarily prevent the establishment of a highway by prescription where the roadway has been used without interruption or substantial change for more than ten years.

3. ———: PRESCRIPTIVE RIGHTS. Prescriptive rights of the public in a road are not necessarily limited to the beaten track.

APPEAL from the district court for Lancaster county: EDWARD P. HOLMES, JUDGE. *Reversed with directions.*

*Frank M. Tyrrell* and *Charles E. Matson,* for appellant.

*Charles O. Whedon, contra.*

ROSE, J.

This is a suit for an injunction to prevent county officers from grading a highway on plaintiff's land. On the section line running north and south between the northeast quarter of section 31 and the northwest quarter of section 32, town 11, range 6, Lancaster county, there is a hedge of osage orange half a mile long. Four rods west of this hedge there is a parallel wire fence of the same length. In the intervening space four rods wide and half a mile long there is a public road. The hedge has been growing on the section line for more than 30 years. The wire fence was built as early as 1881, and has been maintained ever since. The road has been continuously used by the public as a highway for more than a quarter of a century. Kendall-Smith Company, plaintiff, is a corporation, and was organized three or four years before the trial of this case. It owns the northeast quarter of section 31 west of the highway, having acquired title from Kendall & Smith, a partnership, and claims the right to control the west half of the four-rod strip of land between

the hedge and the wire fence. June 7, 1906, county officers were preparing to grade and otherwise improve the road, when they were temporarily restrained on plaintiff's application by an order limiting their operations to a two-rod strip west of the hedge. This was followed by a decree allowing a perpetual injunction. Defendant appeals, and asks this court to reverse the judgment below on two grounds: (1) The four-rod strip was dedicated by the owners and accepted by the public for highway purposes. (2) The public acquired a highway four rods wide by prescription, having used the land under claim of right or adversely to plaintiff's ownership without interruption for more than 20 years.

1. The record shows that the county board made an order February 22, 1876, locating the road on the section line. A witness for plaintiff testified that a strip of land two rods wide on each side was at a later date donated to the public by adjacent owners, though the land east of the hedge was inclosed by a fence, and no part of it was ever used for a highway. The county not having removed the hedge and the land east of it being inclosed, the travel was diverted to the west side. After the county board made its order locating the road on the section line, and when the land east of it was closed against the public by fences, Kendall & Smith, owners of the quarter section of land west of the hedge, erected the wire fence described, and thereafter allowed the public to use the highway without interruption for more than 20 years. It is shown by a plat and by other evidence that the roadway for the greater part of the half mile has followed closely a line midway between the hedge and the wire fence, but varying in places from one side to the other. The proofs also show that the road has been worked by the county or by road overseers for more than 20 years. In this state ten years' user under such circumstances raises a presumption of dedication. *Rube v. Sullivan,* 23 Neb. 779. In a later case the following rule was announced by this court: "Evidence of ten years' use by the public of a road

through cultivated land without substantial variance, with the knowledge and acquiescence of the owner for a period of ten years, raises the presumption of an implied dedication and acceptance of such road as a public highway." *Brandt v. Olson,* 79 Neb. 612.

Defendant, however, does not rely alone on user with the knowledge and acquiescence of the owners to prove a dedication, but urges specific acts on their part to establish a grant to the public. It is argued on behalf of defendant that the construction of the wire fence is evidence of an intention to dedicate to the public the land left open. On this subject the supreme court of Illinois said: "We are of the opinion that it has been established in this case that the fence built in the year 1855 was not only apparently on a line thirty-three feet north of the south line of section 10, but was so in fact. And, that fact being established, no stronger proof of an intention to give the strip of land thus thrown out to the public for a street or road could be furnished, unless it were shown that a written dedication or an actual platting had been made." *Moffett v. South Park Commissioners,* 138 Ill. 620.

The proof of the intention to dedicate has support in other facts. One witness testified that, under direction of a member of the partnership owning the land, seeds of trees were sown along the fence, and another witness had assisted in setting out a tree at each fence post. In discussing acts like those described, the supreme court of Iowa said: "But we are of the opinion that the facts of the case show a dedication of the land outside of the hedge to the public use. When the hedge was planted, the highway was in use. It was planted for the purpose of a fence between the field and the highway. No man in his senses would have planted and maintained it at an average distance of three feet from the highway, and at the same time kept a fence on the line of the road. The legal presumption is that the person planting it intended the hedge to be on the line dividing the highway from his

45

land.  The fact that the line of the hedge corresponds
with the hedges adjoining it along the road, and gives the
usual width to the road, supports this presumption."
*Quinton v. Burton,* 61 Ia. 471.  This court in the first
paragraph of the syllabus in *Cassidy v. Sullivan,* 75 Neb.
847, announced the following rule:  "Where adjoining
landowners place fences and plant trees along the line
between their lands in such a way as to leave an inter-
vening space for public travel, and with the intention that
it be used for that purpose and the public enter upon and
use the intervening space as a highway and continue in
such use and enjoyment thereof for almost 20 years, it will
be regarded as a highway by dedication."

The defense of dedication is strengthened by circum-
stances in addition to those already mentioned.  There is
testimony to the effect that Kendall & Smith owned or
controlled the land on both sides of the hedge for a period
of more than ten years after the wire fence had been con-
structed, and during that time kept the four-rod strip
west of the hedge open and the land east of it closed and
that Kendall had knowledge of the use the public was
making of the land in controversy and at different times
sent employees to work on the road under the direction of
a public overseer who gave them receipts showing the
services rendered.

In support of the petition for injunction, Kendall testi-
fied, in substance, that the owners of the land opened the
road for their own benefit; that the wire fence was not
erected four rods west of the hedge for the purpose of
dedicating more land to the public for highway purposes;
and that the additional strip was intended for the private
convenience of the owners, affording a passage from farm
buildings to other lands and a place for farm drainage;
but the presumption arising from user and the unequivo-
cal acts of the owners in constructing the wire fence, in
thus opening to the public a strip of land four rods wide,
in keeping the land east of the hedge closed, in sowing
seeds of trees along the fence, in planting trees beside

the posts, in allowing the public to use the land left open, in recognizing the authority of public overseers to repair the road, and in sending men to work under their authority are more convincing proofs of the *animus dedicandi* than statements by the witness as to other purposes of the owners.' Such acts are inconsistent with a purpose to retain dominion over the land in dispute as against the public. The trial judge visited the *locus in quo,* and found there were no trees growing along the wire fence at the time of his visit, and this finding is urged in support of the injunction. The correctness of the finding does not disprove the dedication or weaken the inference arising from the unequivocal acts of the owners in building the fence and in sowing the seeds of trees, since one of the county commissioners testified there had been thousands of trees along the wire fence, and another witness said the trees had been cut down. The rights which the public acquired by dedication were perfect when plaintiff was incorporated, and could not be defeated by any subsequent conveyance of the land. *Wilson v. Sexon,* 27 Ia. 15. Defendant's proof is sufficient to establish a dedication.

2. Defendant also insists that the public acquired the highway by prescription. It is established beyond question that a road west of the hedge has been worked by the county or by road overseers and used for public travel for 20 years or more. There is convincing proof that the roadway for the greater part of the half mile has followed closely a line midway between the hedge and the wire fence, but varying in places from one side to the other. Defendant introduced a plat prepared by the county surveyor, which appears in the record as exhibit 2. Kendall testified that the plat did not correctly show the line of travel all the time for the ten-year period prior to the bringing of this suit; that the wagon road had varied therefrom perhaps 20 feet, and that in different places it had been nearer to the hedge fence than the plat indicated. In the oral argument, counsel for plaintiff relied on this testimony, referred to the plat to disprove the prescrip-

tive right asserted by defendant, and called attention to the fact that a portion of the wagon track near the north end of the road in dispute was wholly on land within two rods of the hedge. Plaintiff's position will be shown more fully by the following excerpt from its brief: "There is established no road by prescription, because the evidence is that the line of travel has not always been along the line shown on the plat. * * * Before the county can establish a right of way over this two rods it must show that it has exercised dominion over the entire strip in absence of a dedication. This it has not done. The plat (exhibit 2) comes far from showing that the traveled highway was on the second two rods west of the section line. The witnesses called to prove work on the road do not pretend that work was done on the two rods in controversy." In this connection plaintiff invokes the following rule announced in *Engle v. Hunt,* 50 Neb. 358, and followed in other cases: "To establish a highway by prescription there must be a user by the general public under a claim of right, and which is adverse to the occupancy of the owner of the land, of some particular or defined way or track, uninterruptedly, without substantial change, for a period of time necessary to bar an action to recover the land." Slight deviations of 20 feet from the line of travel in a few places on half a mile of road which has been continuously used for more than 20 years are not sufficient to prevent the public from acquiring the highway by prescription. A number of witnesses testified the line of travel remained substantially unchanged for twice the statutory period. Slight variances to avoid mud, pools, encroachments or obstructions are frequent on roads acquired by user, and are exceptions to the rule quoted from *Engle v. Hunt,* 50 Neb. 358. The deviations relied upon by plaintiff fall clearly within the following doctrine announced by this court in *Nelson v. Jenkins,* 42 Neb. 133: "It is not indispensable to the establishment of a highway over lands by prescription, or adverse user, that there be no deviation in the line of travel. If the point of travel

has remained substantially unchanged for the full period, it is sufficient, even though at times, to avoid encroachments or obstructions upon the road, there may have been slight changes in the line of travel. *City of Beatrice. v. Black,* 28 Neb. 263."

Plaintiff's argument to the effect that defendant did not occupy the land west of the beaten track, where the line of travel was wholly on land within two rods of the hedge near the north end, and that therefore the public did not use the entire four-rod strip continuously for the full statutory period, is clearly untenable. The land used for a county highway is not confined to the wagon track. Teams usually pass wherever they meet, and necessarily depart from the beaten path. When they leave the roadway to pass each other, the public asserts dominion over and uses land outside of the line of travel, and prescriptive rights are not confined to the graded roadway. In *Bartlett v. Beardmore,* 77 Wis. 356, the court said: "Most country roads have a narrow beaten track, but it does not follow that the use is confined to such path. Teams must pass each other, and for that purpose must necessarily depart from the main traveled track. So when such track is muddy, public convenience requires departures from such track. We cannot hold that the public can acquire no legal right to such sides of the main traveled track by such ordinary user. On the contrary, it is held by courts of high authority that, 'where a highway is established by user merely over a tract of land of the usual width of a highway, the right of the public is not limited to the traveled path, but such user is evidence of a right in the public to use the whole tract as a highway by widening the traveled path, or otherwise, as the increased travel and the exigencies of the public may require.' *Sprague v. Waite,* 17 Pick. (Mass.) 309; *Hannum v. Inhabitants of Belchertown,* 19 Pick. (Mass.) 311; *Simmons v. Cornell,* 1 R. I. 519; *Cleveland v. Cleveland,* 12 Wend. (N. Y.) 172." One of the county commissioners testified that the grade was midway between the hedge and the wire fence;

that there were ditches on both sides where earth had been removed for grading purposes, and that the grade and ditches could be plainly seen. In using teams to scrape out the earth at the sides of the road, defendant would necessarily assert dominion over the full width of the four-rod strip.

A highway the full width of the land between the hedge and the wire fence was clearly established by user. The prescriptive rights of defendant were complete before plaintiff acquired title to the quarter section of land west of the hedge. On the testimony in the record the findings should have been in favor of defendant. The decree below is therefore reversed, with directions to the district court to dismiss the action.

REVERSED.

FAWCETT, J., dissents.