# ANNA JOHNSON AND OTHERS v. OSCAR OLSON.[1]

May 26, 1933.

No. 29,369.

*Works & Stoller,* for appellants.
*S. Bernhard Wennerberg,* for respondent.

*OLSEN, Justice.*

The plaintiffs bring this action to have it adjudged that they are the owners of an easement, by prescription and adverse user, for the

[1]Reported in 248 N. W. 700.

purpose of travel through a five-acre tract of land owned by the defendant, upon and along a line and route described in the complaint. After trial the court made findings of fact and conclusions of law to the effect that the use of said line of travel across defendant's land was by permission and license only, revocable at the will of the defendant, and that plaintiffs had no easement in or through defendant's land along the route described. Plaintiffs made a motion for a new trial and appeal from the denial of such motion.

The single assignment of error presented is that the decision is not justified by the evidence and is contrary to law. The evidence shows that Sven Ingelson, the husband of plaintiff Emma Ingelson, became the owner of the west half of the northwest quarter of section 13, township 34, range 20, except five acres thereof in a square body in the northwest corner of the 80 acres. He moved onto the land with his family in 1893. Sven Ingelson died in 1921, and the plaintiffs are his heirs at law and the owners of the land since his death. His widow and the son Gotfred have occupied the land since the father's death.

In 1898, August Olson, the father of the defendant, became the owner of the five-acre tract described and resided thereon from then until his death in April, 1926. His son, the defendant, has since resided thereon, and became sole owner of the five-acre tract in March, 1927.

There is a public highway coming from the north down to the northwest corner of said section 13, then curving to the west or southwest. The buildings on the Ingelson farm are located some distance south of the northwest corner of the section and south of defendant's five-acre tract. Defendant's dwelling, barn, garage, and farmyard are on the five-acre tract, the barn and garage extending partly over the section line onto a tract of land owned by defendant in section 14. According to defendant's evidence, from 1893 to 1900, Ingelson traveled over a route on section 14, west of defendant's farm buildings and west of the five-acre tract in section 13, to reach the public highway mentioned. In 1900 this route was

obstructed by a large tree falling across it. Ingelson then asked and was granted permission to drive across the five-acre tract and through the Olson farmyard instead of driving, as he had been doing, west of the farmyard and buildings on section 14. The land in section 14, over which Ingelson had theretofore traveled, apparently was owned by August Olson and was a part of his farm. After permission granted in 1900 and up to his death in 1921, Sven Ingelson continued to drive across the five-acre tract and through the Olson farmyard along the route now claimed as an easement. After Ingelson's death and up to fall of the year 1928, his heirs, occupying the Ingelson farm, continued so to use the route. At that time the defendant objected to further travel across his land and obstructed the way. There is some evidence that the Ingelsons have at times put some gravel on the traveled way and made some small improvements thereon. What part of this gravel and improvements were on the land of the defendant is not clear.

As used up to 1928 and as now claimed, the route of travel for which an easement is sought to be established passes through defendant's farmyard, leaving his dwelling and garage on one side thereof and his well, barn, machine shed, and chicken house on the other side.

Plaintiffs contend that the long continued use of the way is such that adverse user for the time necessary to create an easement must be held conclusively shown, or at least that the evidence is insufficient to justify the court in holding the use to have been permissive and not hostile or adverse. If there were no circumstances shown or testimony as to permission, this would be correct. We have here the circumstance that the way claimed runs through the landowner's farmyard between his farm buildings in a very inconvenient place for an easement for travel by others to be located. It seems improbable that such travel could continue without express permission of the landowner. Then there is the testimony of the defendant's sister, that she was present at a conversation between her father and Sven Ingelson in 1900. She testified that Ingelson asked if there was any objection if he went on the east side of the

barn in place of on the west side, and that her father said that was all right; that Ingelson asked permission to drive there, and her father said he could. On cross-examination she testified: "Well, he [Ingelson] come over and asked dad if he had any objection if he went on the east side of the barn in place of on the west side," and her father said "no." This evidence is sought to be impeached by testimony to the effect that the change in driving took place in 1899 instead of 1900. Even if that be true, it nevertheless tends to prove the permissive character of the use. The testimony of the sister, that the change in routes was made in 1900, is corroborated by defendant's testimony. It is further urged that, as the sister was but nine years old at the time of this conversation, it should not be believed. We cannot so hold. The witness was in the presence of and observed by the trial judge, and her credibility was for the court. We hold the evidence sufficient to sustain the finding of the trial court that the use of the way was permissive and only a revocable license.

■ Being permissive in its inception, the user would not ripen into an easement until and unless there were a subsequent distinct and positive assertion of a hostile right by the user, and continued user after such hostile assertion for the statutory time to acquire an easement by prescription or adverse possession. No such hostile change is here shown up to 1928. Johnson v. Skillman, 29 Minn. 95, 12 N. W. 149, 43 Am. R. 192; Minneapolis Mill Co. v. M. & St. L. Ry. Co. 51 Minn. 304, 53 N. W. 639; City of Hutchinson v. Wegner, 157 Minn. 41, 195 N. W. 535; Naporra v. Weckwerth, 178 Minn. 203, 226 N. W. 569, 65 A. L. R. 124.

■ Counsel for plaintiffs claim that on the testimony of defendant's sister, hereinbefore set out, there was a surrender by Ingelson of an easement held by him in the route of travel over the Olson land prior to 1900, and that in consideration thereof August Olson orally granted to Ingelson an easement in the new route thereafter traveled, and they cite several cases from other states claimed to sustain that proposition. The trouble with that proposition is that as far as shown by the record Ingelson had no easement by grant

or prescription in the old route of travel. He had nothing to surrender or give up. The cases cited, as we understand them, were based on the fact that the claimant had a valid easement by grant or prescription which he surrendered as a consideration for an oral grant of a different easement which he thereafter entered upon and used. The evidence fails to show the surrender by Ingelson of anything of value or any surrender and no grant of an easement in the new route resulted.

The order appealed from is affirmed.