71 P.(2d) 646

HESTER v. SAWYERS et al.

No. 4230.

Supreme Court of New Mexico.

Sept. 7, 1937.

Hubert O. Robertson, of Silver City, for appellant.

Wilson & Woodbury, of Silver City, for appellees.

BRICE, Justice.

It will be unnecessary to refer to the pleadings. The question is whether the district court erred in holding that appellee has title by prescription to a right of way over appellant's land.

If there is substantial evidence to support the findings and judgment of the court, it will not be disturbed by us. The evidentiary facts are practically undisputed and are as follows:

The parties are adjoining landowners. At the time and before appellee bought his property in 1920, appellant was the owner of the land over which the easement is

claimed. Persons owning land on three sides had theretofore built fences around their own land, thus in effect placing fences on three sides of appellant's land; but the east side was open and all persons desiring so to do, could pass across it.

The two tracts of land are separated by a fence belonging to appellee, which is appellant's west boundary. The original way had its beginning at appellee's house, passed an opening in the fence, and ran easterly across appellant's land to a road along her boundary, which at that time was unfenced.

In 1922 a golf club secured the consent of appellant to place a fence along the east boundary, thus inclosing the land; after which it was used in part as a golf course. Appellee claimed a right to pass over the land at that time, though he did not know who owned it. The golf club secured his consent to the building of the fence. He had no deed to the road, paid no taxes on it, and based his claim of right on the fact that "it was the only way to get in and out and had been used for years."

At the time the east fence was built the road was materially changed. From the west boundary it followed the old road a very short distance, then turned away to the south of it some distance, thereafter paralleling it for the greater distance across appellant's land, and terminated on the road at the east side in a lane south of "the old road." A map was introduced in evidence showing the "old road," and the "present road," from which it appears that they are not substantially at the same location, though practically parallel.

Since the east fence was built, appellee, his tenants, visitors, and those having business with him (and no other persons), have used the road daily and openly, without interruption or objection from any one until just prior to the filing of this suit in the district court. Appellee did not have the affirmative consent or authority of appellant, or any person, to use the road. When he gave his consent to the golf club to build the fence, he stated to its representative: "I don't lose my right to come down and out of this canyon." He sells lumber at his house and has no other way out. He did not buy his land from appellant. He testified: "My business is selling lumber at my claim up above my house, with no other way than this road to get to and from my place. I have rent houses and this road is the only way my tenants have to go back and forth. If the road is closed I will have to discontinue my business and move out of there. I claim this road as my right of way."

Since the east fence was built, more than ten years prior to the filing of this suit, appellee has continuously graded and kept the road in condition for travel for his own use.

Just prior to the filing of this suit the appellant saw the appellee and insisted that he change the road to run further north so that it would interfere less with her property. Appellee agreed to do this, and to that end began the grading of a new

road. This appellant claimed did not comply with her directions, so she closed appellee out with a fence, which was torn down by him. This suit followed.

■ There is no specific statute in this state under which title to an easement or other incorporeal hereditament can be obtained by prescription, but appellant claims that section 83-122, Comp.St.1929, applies to corporeal and incorporeal hereditaments. It reads in part as follows: "No person or persons, nor their children or heirs, shall have, sue or maintain any action or suit, either in law or equity, for any lands, tenements or hereditaments, against any one having adverse possession of the same continuously in good faith, under color of title, but within ten years next after his, her or their right to commence, have or maintain such suit shall have come, fallen or accrued, and all suits, either in law or equity, for the recovery of any lands, tenements or hereditaments so held, shall be commenced within ten years next after the cause of action therefor has accrued: * * * 'Adverse possession' is defined to be an actual and visible appropriation of land, commenced and continued under a color of title and claim of right inconsistent with and hostile to the claim of another."

If this statute applies to easements, then appellee has no title for he does not claim, nor did he prove, color of title.

It was the ancient rule of law that the words "lands, tenements or hereditaments" comprehended only freehold estates and did not apply to easements or other incorporeal hereditaments, Hutchinson v. Bramhall, 42 N.J.Eq. 372, 7 A. 873; likewise statutes of limitation like that to which we have referred, which bar actions to recover lands held adversely under color of title for a period of years, are generally held to apply to corporeal hereditaments only.

"Prescription may be defined to be a mode of acquiring title to incorporeal hereditaments by continued user, possession or enjoyment had during the time and in the manner fixed by law. The term properly applies only to incorporeal rights. An interest in the land of another greater than an incorporeal hereditament, such as the possession and use of a building thereon, cannot be established by prescription. Prescription is distinguished from custom in that the former is a personal usage or enjoyment confined to the claimant and his ancestors or those whose estate he has acquired, while the latter is a mere local usage, not connected to any particular person, but belonging to the community rather than to its individuals. Adverse possession is distinguished from prescription in that it is, properly speaking, a means of acquiring title to corporeal hereditaments only, and is usually the direct result of the statute of limitations; while prescription is the outgrowth of common-law principles, with but little aid from the legislature, and has to do with the acquisition of no kind of property except incorporeal hereditaments." 1 Thompson on Real Property, § 372.

"Prescription applies only to incorporeal hereditaments. An interest in the land of

another greater than an incorporeal hereditament, such as the possession and use of a building thereon, cannot be established by prescription. The statutes of limitations do not directly apply to actions in which incorporeal hereditaments, such as easements, are involved, but only to actions for the recovery of land." 1 Thompson on Real Property, § 375.

See 19 C.J. title Easements, § 18; 9 R.C. L. title Easements, § 32; 2 C.J.S. title Adverse Possession, § 2; Murray v. Scribner, 74 Wis. 602, 43 N.W. 549; Boyce v. Missouri Pacific R. Co., 168 Mo. 583, 68 S.W. 920, 58 L.R.A. 442.

Appellant does not seriously contend that the statute of limitation applies to easements, but insists that if it does not, then the right is one at common law and that twenty years use is necessary to acquire title by prescription.

The courts of England and, with few exceptions, of the United States, have adopted the rule that the period of use for acquiring such title by prescription corresponds to the local statute of limitation for acquiring title to land by adverse possession.

"The period for acquiring an easement in land corresponds to the local statute of limitation as to land. It would be irrational to hold that an easement may not be acquired by the same lapse of time required to confer title to the land by adverse possession. The period of limitation for the bringing of actions to recover the possession of land is generally adopted as the period for perfecting easements by prescription. This rule is based upon the assumption that if there had been no grant, the owner would have put an end to the wrongful occupation before the full period of limitation had expired. And while it is often said that from such user a grant will be presumed, the presumption in effect amounts to a positive rule of law, and evidence that no grant was made would not be material. * * *" 1 Thompson on Real Property, § 374.

See Boyce v. Missouri Pacific R. Co., supra; Johnson et al. v. Lewis et al., 47 Ark. 66, 2 S.W. 329, 14 S.W. 466; 19 C.J. title Easements, § 18; 9 R.C.L. title Easements, § 32; Vereen & Sons Inc. v. Houser et al., 123 Fla. 641, 167 So. 45. This seems to have been the assumption of the Territorial Supreme Court in Stamm v. City of Albuquerque, 10 N.M. 491, 62 P. 973. Also see Trambley v. Luterman, 6 N.M. 15, 27 P. 312.

Appellant, anticipating this holding, insists that if, following the general rule, we adopt the period of time provided by statute under which adverse possession will bar an action to recover possession of real property, then we should hold that appellee must establish color of title and that he had paid taxes as required by the statute of limitation in question, and cites Harkness et al. v. Woodmansee et al., 7 Utah, 227, 26 P. 291; North Point Consolidated Irrigation Co. v. Utah, Etc., Canal Co., 16 Utah, 246, 52 P. 168, 40 L.R.A. 851, 67 Am. St.Rep. 607; Funk v. Anderson, 16 Utah,

246, 61 P. 106; Coleman v. Hines, 24 Utah, 360, 67 P. 1122; Quanah, A. & P. R. Co. v. Wiseman (Tex.Civ.App.) 247 S.W. 695; Smith v. Jensen, 156 Ga. 814, 120 S.E. 417; Louisville & Nashville R. Co. v. Hays, 11 Lea (Tenn.) 382, 47 Am.Rep. 291. These cases in the main sustain the position of appellant, but we think are against the weight of authority. Also see Humphreys v. Blasingame, 104 Cal. 40, 37 P. 804, 805.

That an easement may be created by prescription, appellant agrees. If we should hold that one claiming an easement because of use for ten years is burdened further with proving he had color of title to such easement, and had paid taxes thereon if levied, then we would be applying the statute of limitation and not the law of prescription to easements, though we have just held the statute of limitation did not apply. Adverse possession of land could not apply to easements, for the use necessary to acquire them is not necessarily constant or exclusive. Cooper v. Smith, 9 Serg. & R. (Pa.) 26, 11 Am.Dec. 658. A prescriptive right is obtained by use alone and does not depend upon any statute. It is founded upon the presumption of a grant, though there may never have been one. The reason for the adoption by the courts of England and generally by those of the United States, of a time of use analogous to that required by statutes of limitation regarding adverse possession of land, is because the common law fixed no definite time. It was, "For a time whereof the memory of man runneth not to the contrary." The courts, through gradual change, ultimately adopted by analogy the time as that for the running of the statute of limitation in cases of lands held by adverse possession as the period of use necessary for a conclusive presumption of a grant. Statutes of limitation are not otherwise involved or material.

We hold that the period of use necessary to create an easement by prescription is ten years, following our statute of limitation with reference to adverse possession of lands. 19 C.C. title Easements, §§ 17 and 18; 9 R.C.L. title Easements, § 32; 1 Thompson on Real Property, § 374. We cite these texts only because the cases are numerous and are cited supporting the textbooks and encyclopedias.

Appellant cites Felberose Holding Corp. v. New York Rapid Transit Corp., 244 App. Div. 427, 279 N.Y.S. 645, 648, on this question. This case sustains the position this court has taken. It appears that the New York Court of Appeals adopted the rule of twenty years user by analogy from the statute of limitation regarding lands. A recent Legislature of New York State reduced the period of adverse possession necessary for acquiring title to lands by limitation, from twenty to fifteen years; and the appellate division held in the case cited that property rights had accrued under the twenty-year rule regarding easements, and the courts should not change it, as the legislature had not; but the principle was not disturbed by that decision.

It is stated in that opinion: "In any event, in so far as prescription is con-

cerned, the passage of 20 years merely creates a presumption that a deed was given and lost. Slight evidence only is necessary to rebut such presumption." This we do not think is supported by any recent authorities and particularly Hughes v. Metropolitan. El. R. Co., 130 N.Y. 14, 28 N.E. 765, cited in support. The old English rule to that effect is not now the law. When there has been user of sufficient time to create the presumption of a grant, such presumption is conclusive. We have cited authorities to that effect.

The use necessary to acquire title by prescription must be open, uninterrupted, peaceable, notorious, adverse, under a claim of right, and continue for a period of ten years with the knowledge or imputed knowledge of the owner. 19 C.J. title Easements, § 32.

Having disposed of these questions of law, we come to apply the facts, about which there is little dispute. The evidence and findings establish appellee's user was continuous, open, uninterrupted, peaceable, notorious, and continued for a period of more than ten years; but it is contended by appellant that it was neither proven to be adverse under a claim of right, nor that it was with the knowledge, or imputed knowledge, of the owner.

If the user was open, adverse, notorious, peaceable, and uninterrupted, the owner is charged with knowledge of such user, and acquiescence in it is implied. 1 Thompson on Real Property, § 462. The real question in the case is whether the user was adverse under a claim of right or only permissive.

A prescriptive right cannot grow out of a strictly permissive use, no matter how long the use. 1 Thompson on Real Property § 471.

A road existed across appellant's uninclosed land before the appellee bought his land; and after he acquired it he continuously used this road that others had used before his time, until the east boundary fence was built. But there was no substantial evidence of an adverse user under claim of right.

Appellant quotes Boullioun v. Constantine et al., 186 Ark. 625, 54 S.W.(2d) 986, 987, as follows: "While not universally recognized, the prevailing rule seems to be that, where the claimant has openly made continuous use of the way over occupied lands unmolested by the owner for a time sufficient to acquire title by adverse possession, the use will be presumed to be under a claim of right; but, where the easement enjoyed is across property that is unenclosed, it will be deemed to be by permission of the owner and not to be adverse to his title." In the Boullioun Case it is also stated: "Cases might and do arise where those using a private way over unenclosed lands may, by their conduct, openly and notoriously pursued, apprise the owner that they are claiming the way as of right and thus make their possession adverse."

In this state, where large bodies of privately owned land are open and unin-

closed, it is a matter of common knowledge that the owners do not object to persons passing over them for their accommodation and convenience, and many such roads are made and used by neighbors and others. Under these circumstances it would be against reason and justice to hold that a person so using a way over lands could acquire any permanent right, unless his intention to do so was known to the owner, or so plainly apparent from acts that knowledge should be imputed to him. Waller v. Hidlebrecht, 295 Ill. 116, 128 N.E. 807; Evans v. Bullock, 260 Ky. 214, 84 S.W. (2d) 26; Shroer v. Brooks, 204 Mo.App. 567, 224 S.W. 53; Bridwell v. Arkansas Power & Light Co., 191 Ark. 227, 85 S.W. (2d) 712; 1 Thompson on Real Property, § 478.

So far as the record shows there was no claim of right to the use of the road communicated to appellant, or evidenced by any acts that indicated a claim of right, prior to the inclosure of the lands by the building of the fence on the east side by the golf club in 1922. The substance of the evidence is that the road was there when appellee bought his place and he used it not knowing to whom it belonged. It is presumed that the original use of the road by appellee and others was permissive.

A prescriptive right may be acquired, although the use was originally permissive, if in fact it became adverse. But the adverse user must be for the full ten years, which excludes the time under which the user was permissive. 1 Thompson on Real Property, § 472. If there was an adverse user by appellee, it must have begun at the time the east fence was placed around the property by Hahn in 1922.

If a use has its inception in permission, express or implied, it is stamped with such permissive character and will continue as such until a distinct and positive assertion of a right hostile to the owner is brought home to him by words or acts. Omodt v. Chicago, M. & St. P. Ry. Co., 106 Minn. 205, 118 N.W. 798; Clarke v. Clarke, 133 Cal. 667, 66 P. 10; Howard v. Wright, 38 Nev. 25, 143 P. 1184; Brandon v. Umpqua Lbr. & Timber Co., 26 Cal.App. 96, 146 P. 46; Scheller v. Pierce County, 55 Wash. 298, 104 P. 277; Pitzman v. Boyce, 111 Mo. 387, 19 S.W. 1104, 33 Am.St.Rep. 536; Smith v. Oliver, 189 Ky. 214, 224 S.W. 683; Smith v. Fairfax, 180 Ky. 12, 201 S.W. 454; Flagg v. Phillips, 201 Mass. 216, 87 N.E. 598; Holm v. Davis, 41 Utah, 200, 125 P. 403, 44 L.R.A.(N.S.) 89; Naporra v. Weckwerth, 178 Minn. 203, 226 N.W. 569, 65 A.L.R. 124; Johnson v. Olson, 189 Minn. 183, 248 N.W. 700; Reider v. Orme, 17 Tenn.App. 497, 68 S.W.(2d) 960.

We approve the rule as stated in Pitzman v. Boyce, 111 Mo. 387, 19 S.W. 1104, 1105, 33 Am.St.Rep. 536: "If permissive in its inception, then such permissive character, being stamped on the use at the outset, will continue of the same nature, and no adverse user can arise until a distinct and positive assertion of a right hostile to the owner, and brought home to him, can transform a subordinate and friendly holding into one

of an opposite nature, and exclusive and independent in its character."

Other courts state it as follows:

"the grantor who continues in possession must make an explicit disclaimer of subserviency to the grantee; that this disclaimer must be clear, unequivocal, and notorious." Omodt v. Chicago, M. & St. P. R. Co., 106 Minn. 205, 118 N.W. 798, 799.

"If this presumption is overcome by evidence showing the use to have been hostile, and that the owner knew of such hostile claim and took no steps to protect his property for a period of five years, then the presumption changes." Clarke v. Clarke, 133 Cal. 667, 66 P. 10, 11.

"A use acquired merely by consent, permission, or indulgence of the owner of the servient estate can never ripen into a prescriptive right, unless the user of the dominant estate expressly abandons and denies his right under license or permission, and openly declares his right to be adverse to the owner of the servient estate." Howard v. Wright, 38 Nev. 25, 143 P. 1184, 1186.

If the only evidence of an assertion by appellee of a hostile right to the use of a way across appellant's land after the fence was built was the fact that "he continually worked and graded" the road, it may be doubted (though we do not decide) whether this was sufficient to change a friendly and permissive use to a hostile and adverse one, according to the authorities we have cited. But after the fence was built a new road was established. A map introduced in evidence shows "the old road" used prior to the building of the fence and "the present road" made and used after the fence was built. The parties do not contend they are the same and all the evidence shows they are different. The two roads converge a short distance from appellee's land and pass through the same opening, otherwise they are entirely different roads. If appellee had used the present road for only eight years, he could not have tacked the use of the old road on it to give him a prescriptive right. A way claimed by prescription must be a definite, certain, and precise strip of land. Gentleman v. Soule, 32 Ill. 271, 83 Am.Dec. 264; Brake v. Crider, 107 Pa. 210, 212; Green v. Richmond, 155 Mass. 188, 29 N.E. 770; Johnson et al. v. Lewis et al., 47 Ark. 66, 2 S.W. 329, 14 S.W. 466; 19 C.J. Title Easements, § 77; 9 R.C.L. Title Easements, § 35.

"Where one, after using a private way over the land of another, abandoned it and used another way over the same land, though he did this at the request of the owner, he cannot tack the two periods of use together so as to establish an easement by prescription. To acquire a prescriptive right of way by consent and uninterrupted use, the use must relate strictly to the identical land over which the right is claimed. It was said in one case that a road cannot be established with a variance of ten or twenty feet; but a slight variation in the course at a given point, or at the terminus of the way, will not defeat the right." 1 Thompson on Real Property, § 399.

The prescription is not terminated by a deviation of a few feet because of mud, washing, pools, or obstructions. Kurtz v. Hoke et al., 172 Pa. 165, 33 A. 549; Kendall-Smith Co. v. Lancaster County, 84 Neb. 654, 121 N.W. 960. But such is not the case here. If in fact rights had been initiated in the first road, they would have been lost when it was abandoned. The two could not have been tacked together to make a prescriptive right, assuming that the first use was adverse. It was said in Peters v. Little, 95 Ga. 151, 22 S.E. 44, 45: "She might have acquired a prescriptive right over the first strip if she had continued to use it; but when she voluntarily abandoned it, although she did so with the consent and at the request of the defendant, the prescription ceased to run in her favor as to that particular strip. As to the second strip, her use of the same did not continue for the requisite time to give a prescriptive right of way over it."

It has been held that one claiming a road by prescription cannot, after such right is obtained, abandon it and claim a prescriptive right to a parallel road over the same land. Follendore v. Thomas et al., 93 Ga. 300, 20 S.E. 329.

The permissive right was to use the old road, not the new one. When appellee abandoned the old road, he established a new road over inclosed lands. He kept the road graded and in repair, exercising control over the strip of land as though his own, for more than ten years. In the absence of proof that this use was per-missive (and there is no such proof), it is presumed, after ten years use, to have been hostile, adverse, and acquiesced in by appellant. Carmody v. Mulrooney, 87 Wis. 552, 58 N.W. 1109.

There is substantial evidence to support the judgment of the district court, and it is accordingly affirmed.

It is so ordered.

HUDSPETH, C. J., and SADLER, BICKLEY, and ZINN, JJ., concur.