2003-NMSC-001

61 P.3d 176

Holly Dietz ALGERMISSEN, Panina Paula Ballen, Leroy M. Garcia, Kim A. Griffith, John S. Hart, Mark Hauswald, Eugene S. Hertel, Jr., Lynn A. Hertel, David D. Kenney, Susan G. Kutvirt, E. Michael Lewiecki, Dana Mccabe, John A. Marsello, Kay Nations, Rebecca Noland, Harvena Righter, Joe Ruiz, Andrew C. Stone, Isabel Stone, a minor, by and through her natural parents and next friends, Andrew C. Stone and Dana Mccabe, and Nina Wallerstein, Plaintiffs–Appellants,

v.

Jonathan B. SUTIN, and Malka S. Sutin, his wife, as individuals or as trustees of their revocable living trust, if any, Michael G. Sutin and Esther S. Sutin, his wife, as individuals or as trustees of their revocable living trust, if any, Harrison H. Alley and Anne Alley, his wife, Maura Lewiecki, David Wolfe and Joan B. Scott, his wife, Tom A. Sellers and Doris M. Sellers, his wife, David P. Sklar, Ralph S. Trigg and Gwen Trigg, his wife, Richard I. Dorin and Maxine H. Dorin, his wife, William J. Chesnut and Jo P. Chesnut, his wife, and James R. McCrory and Cynthia McCrory, his wife, Defendants–Appellees.

No. 27,186.

Supreme Court of New Mexico.

Dec. 12, 2002.

The Simons Firm, LLP, Thomas A. Simons, IV, Charles V. Henry, Santa Fe, NM, for Appellants.

Henkel & Sloan, PC, Robert G. Sloan, Albuquerque, NM, for Appellants.

Geoffrey W. Sloan, Santa Fe, NM, for Appellants.

Sutin, Thayer & Browne, Norman S. Thayer, Michael G. Sutin, Albuquerque, NM, for Appellees.

Moses, Dunn, Farmer & Tuthill, P.C., Victor E. Carlin, Albuquerque, NM, for Appellees.

## OPINION

MINZNER, Justice.

{1} Plaintiffs appeal from a district court order, following a bench trial, which dismissed with prejudice their claims to a public easement by prescription. The district court determined that Plaintiffs failed to prove the elements of a prescriptive easement by clear and convincing evidence. Plaintiffs appealed initially to the Court of Appeals, which in turn certified the matter to this Court. (*See* NMSA 1978, § 34–5–14(c) (1972); Rule 12–606 NMRA 2002. We affirm.

### I

{2} This case revolves around a neighborhood dispute in the north valley area of Albuquerque. Plaintiffs are all members of the public who had crossed Defendants' lands for many years to access public trails within the Rio Grande Valley State Park for hiking, jogging, horseback riding, and other recreational uses. This all came to an end in May of 1995, when some of the Defendants constructed a fence and a gate that completely blocked access through their property. Plaintiffs sued. We take the following facts from the trial court's findings and the testimony elicited at trial.

{3} Defendants own property located between the east side of the Rio Grande River and Rio Grande Boulevard. Plaintiffs wish to cross this property on a course that includes a long dirt pathway connecting Defendants' homes commonly called "Elfego Road," which runs west of Rio Grande Boulevard. The claimed easement continues beyond the pathway on a narrow footpath across the Sutin property, and ends at the Rio Grande State Park.

{4} Elfego Road was created as a private easement for ingress and egress over private property. It is not within the Albuquerque city limits, and it is not claimed or maintained by any government entity. While Elfego Road has remained in place over basically the same property throughout recent history, its exact alignment with the private property it crosses has not been determined. Elfego Road is used both by the people who live and work along it, and their friends, neighbors, relatives and business invitees. Most of the residents along the road only own residences on their property, but the Alleys run a horse business as well. The Sutins do not live on their property, and they never have.

{5} Starting in the 1940s, people were permitted to cross this property. This was all part of a cooperative effort and agreement between the families on both sides of Elfego Road. At that time, the area was open and sparsely populated. People continued to travel upon Elfego Road and the footpath to the river from that time until 1995. A generally friendly, cordial, and neighborly attitude existed during this time between the residents of Elfego Road and anyone who might be traveling on it. All the landowners recognized each others' right to use the Road to reach their homes, as well as for recreational purposes. This attitude extended to all family members and guests of the landowners.

{6} In the early 1990s, the Alleys, who owned the land to the southeast off Elfego Road, constructed a fence and a gate that closed off their driveway. This forced anyone wishing to access the Rio Grande from Elfego Road to cross through land belonging to the Sutins. The Sutins attempted to sell their property in 1995. The deal fell through, however, because the commitment for a title insurance policy contained exceptions for the possibility of prescriptive easements. This precipitated action to close off the property. In May of 1995, the Sutins constructed fences around their property and installed a gate that effectively precluded anyone from crossing it. Plaintiffs sued approximately one year later, claiming that they were entitled to an easement by prescription, based on their use of the property between 1985 and 1995.

{7} The district court held a four day bench trial in May of 2000, and entered its findings of fact and conclusions of law approximately one year later. In its conclusions of law, the court did not specify which elements of the prescriptive easement claim failed. Rather, the court stated, "Plaintiffs have failed to prove the elements of their public prescriptive easement claim over Elfego Road, the Alley property and the Sutin

bosque tract property by clear and convincing evidence." The district court also did not state whether it relied on any legal presumptions in coming to this conclusion. The parties therefore address most of the elements of this claim in their arguments to us, as well as other arguments. As indicated below we need to address only the sufficiency of the evidence to support the elements of the claim.

## II

{8} Plaintiffs claim that the judgment of the district court should be reversed because the district court erred in determining that they had not met their burden of proof in establishing all the elements of a prescriptive easement. Plaintiffs also claim that the district court erred in its conclusion that prescriptive easements cannot be held for recreational purposes, or for mere convenience. For their part, Defendants assert that we should affirm the district court because it correctly determined the facts and applied the law. Defendants further assert that the easement should not be granted, because this would amount to an unconstitutional taking of private property without just compensation. Because we affirm the trial court on the basis that the legal elements required for the creation of a prescriptive easement were not satisfied, we need not address the constitutional argument.

{9} On appeal, we decide whether substantial evidence supports the district court's findings and whether these findings support the conclusions that the elements required to establish a public easement by prescription were not proved by clear and convincing evidence. *See Village of Capitan v. Kaywood*, 96 N.M. 524, 524, 632 P.2d 1162, 1162 (1981); *Scholes v. Post Office Canyon Ranch, Inc.*, 115 N.M. 410, 411, 852 P.2d 683, 684 (Ct.App.1992) (holding that each element of a prescriptive easement must be proven by clear and convincing evidence). In cases such as this, where the trial court found against the party with the burden of proof, we should affirm such a finding if it was rational for the fact finder to disbelieve the evidence offered in support of the contrary finding. *Sosa v. Empire Roofing Co.*, 110

N.M. 614, 616, 798 P.2d 215, 217 (Ct.App. 1990). *See also State ex rel. Dep't of Human Servs. v. Williams*, 108 N.M. 332, 335, 772 P.2d 366, 369 (Ct.App.1989) ("Even in a case involving issues that must be established by clear and convincing evidence, it is for the finder of fact, and not for reviewing courts, to weigh conflicting evidence and decide where the truth lies."). In order to have been successful in their claim that a public easement by prescription exists, Plaintiffs must have proven that the general public used the passageway in an "open, uninterrupted, peaceable, notorious, [and] adverse" manner, under a claim of right, and "continued for a period of ten years with the knowledge, or imputed knowledge of the owner." *Village of Capitan*, 96 N.M. at 525, 632 P.2d at 1163. If any one of these elements were lacking, then we must hold that Plaintiffs failed in their claim. Nevertheless, Plaintiffs claim that they met their burden with regard to each of these elements, so we consider each separately.

{10} We also take this opportunity to clarify the law of prescriptive easements. The elements of this claim are the product of many years of historical development, beginning with *Hester v. Sawyers*, 41 N.M. 497, 71 P.2d 646 (1937). We believe that this is an appropriate time to consolidate these elements into a more succinct and less redundant test for determining when a court should grant a prescriptive easement. In doing so, we follow the example of the recently published *Restatement (Third) of Property: Servitudes* (2000). According to this model, an easement by prescription is created by an adverse use of land, that is open or notorious, and continued without effective interruption for the prescriptive period (of ten years). *Id.* § 2.16; § 2.17. This definition encompasses all of the descriptive requirements that we have held in the past to be part of an easement by prescription. We also note that Plaintiffs in this case seek a *public* easement by prescription. Creation of such an easement presents unique analytical problems (such as whether it amounts to a taking of private property without compensation). *See id.* § 2.18. On the facts before us, however, the analysis of this type of

prescriptive easement is the same as it would be if Plaintiffs had only requested a private prescriptive easement.

## A

**{11}** The first element of the legal standard for the creation of a prescriptive easement we need to discuss is adversity. Adversity is a general concept that simply means a person holds an interest "opposed or contrary to that of someone else." *Black's Law Dictionary* 54 (7th ed.1999). An adverse use is a use made without the consent of the landowner. It is also the type of use that would normally give rise to a cause of action in tort. *Restatement, supra,* § 2.16 cmt. b.[1] In many circumstances, adversity (or the lack thereof) can be difficult to prove, due to the passage of time. Therefore, a series of presumptions are used. For example, a use that has its inception in permission will be presumed to continue to be permissive, until "a distinct and positive assertion of a right hostile to the owner is brought home to him by words or acts." *Hester,* 41 N.M. at 505, 71 P.2d at 651. Similarly, if all of the other elements of a prescriptive easement claim are satisfied, the use is presumed to be adverse in the absence of proof of express permission. *Village of Capitan,* 96 N.M. at 525, 632 P.2d at 1163; *Sanchez v. Dale Bellamah Homes, Inc.,* 76 N.M. 526, 529, 417 P.2d 25, 27(1966). We have explained that presumptions do not have the effect of dictating a result in a civil trial. Rule 11–301, NMRA 2002 makes this clear. Under this rule, presumptions in a civil nonjury trial are "little more than rhetorical devices; *one can argue them to a judge but they have no mandatory effect upon his decision.*" *Mortgage Inv. Co. v. Griego,* 108 N.M. 240, 244, 771 P.2d 173, 177 (1989) (internal quotations omitted) (emphasis in original). The Restatement does not take a position on the use of presumptions. *Restatement, supra,* § 2.16 cmt. g.

**{12}** We must determine whether there was sufficient evidence to support the finding that Defendants gave permission to Plaintiffs to cross their land. As stated earlier, the fact finder should presume adversity if all of the other elements of the claim are satisfied, and there is no evidence of express permission. *Village of Capitan,* 96 N.M. at 525, 632 P.2d at 1163. It is important to recognize what this does *not* mean. This does not mean that a landowner must demonstrate that he or she gave express permission in order to defeat a prescriptive easement claim. Our cases demonstrate that implied permission is also permission sufficient to rebut the presumption. In *Hester,* we said that "[i]f a use has its inception in permission, *express or implied,* it is stamped with such permissive character and will continue as such until a distinct and positive assertion of a right hostile to the owner is brought home to him by words or acts." 41 N.M. at 505, 71 P.2d at 651 (emphasis added).

**{13}** Although the presumption of adversity applies only when there is no evidence of express permission, the trial court is entitled to consider other evidence of permission when determining whether plaintiffs really were adverse to the landowners, under a claim of right. If the presumption is rebutted by evidence of express or implied permission, plaintiffs must still persuade the trial court that their use was adverse. *See* 4 *Powell on Real Property,* § 34.10[2][c], at 34–91 to –94 (Michael Allan Wolf ed., Rel. 99, 2002) ("When, however, rebutting evidence [of the presumption of adversity] has been produced, the burden of establishing the fact of adversity rests upon the claimant of the easement."). Evidence of permission, be it express or implied, is relevant to this inquiry. *Hester,* 41 N.M. at 505, 71 P.2d at 651. *See also Nice v. Priday,* 137 Or.App. 620, 905 P.2d 252, 255 (1995) (holding that landowners may rebut the presumption of adversity by "proving express permission, or by evidence showing that [the claimants] used the existing road in a way that did not interfere with the [landowners'] use"); *Clayton v. Jensen,*

---

1. The Restatement also notes that there is a conceptual problem with this definition as it is applied to easements claimed in favor of the public, rather than private individuals. *Id.* § 2.18 cmt. f. One cannot file a cause of action for ejectment against the public. That may be true, but we think that the definition is still helpful. Defendants would have the ability to sue the individuals who cross their land in their private capacities.

240 Md. 337, 214 A.2d 154, 158 n. 1 (1965) (stating that the presumption may be rebutted "by a showing of express permission and perhaps by other excusatory facts").

{14} Clearly the Sutin Defendants could not have given permission, because they did not even know that Plaintiffs were using their property. Evidence was introduced, however, of acts by the Alley Defendants that were consistent with permission. Specifically, some Plaintiffs testified that they waved "hello" and would stop and chat with the people who lived in the area. Further, one witness testified that in the 1940s, the owners of what is now the Sutin bosque tract gave the whole neighborhood permission to cross their land.

{15} While the trial court never explicitly found the "express permission" required to avoid the presumption, it did find that "[t]he use of private Elfego, the southern part of the McCrory easement, the eastern part of the Alleys' driveway, and the Sutin bosque tract property for purposes of walking, jogging, bicycling and/or horse riding by neighborhood property owners, their neighbors, families, guests and business invitees has always been permissive." This is an appropriate use of the presumption that use that begins as permissive stays that way. There is no evidence of any acts of hostility by Plaintiffs that would rebut this. Permission was revoked when Defendants put up fences and gates around their property to keep Plaintiffs out. The Alleys did this in 1992 or 1993, and the Sutins did this in 1995. This suit was brought in 1995. Defendants' actions that effectively revoked this permission happened toward the end of the alleged prescriptive period. Therefore, Plaintiffs could not have used the property adversely for the required prescriptive period of ten years. We believe that the record includes an adequate basis for this finding, and thus the trial

court was free to weigh this evidence more heavily than the presumption of adverse use.

■■■■ {16} The parties agree that in this case the district court may have applied an exception to the presumption of adversity, commonly called the "neighbor accommodation exception." Under this exception, a court should not presume adverse use when the "claimed right-of-way traverses large bodies of open, unenclosed, and sparsely populated privately-owned land." *Scholes*, 115 N.M. at 412, 852 P.2d at 685 (Ct.App.1992) (internal quotations omitted). Plaintiffs point out, however, that all of the district court's findings of fact that could lead to this conclusion discussed events that took place prior to the alleged prescriptive period.

{17} Regardless of whether the district court applied the neighbor accommodation exception, we do not think that it should apply in this case. We have limited this doctrine to apply only to "large bodies of unenclosed land . . . where the owners thereof *could not reasonably know* of passings over said lands." *Maestas v. Maestas*, 50 N.M. 276, 279–80, 175 P.2d 1003, 1006 (1946) (emphasis added); *see also Village of Capitan*, 96 N.M. at 525, 632 P.2d at 1163 (holding that neighbor accommodation exception did not apply to small tract in a populated subdivision). While we do think that it was reasonable for some of Defendants *not* to know of Plaintiffs' use of their land, they also could have reasonably found out.[2] More importantly, however, resort to this exception is unnecessary, because we hold that substantial evidence supported the district court's finding of permissive use.

**B**

■■■■ {18} The elements that we have labeled as knowledge and imputed knowledge are simply descriptors of the same requirement: that the prescriptive use must be open

---

**2.** Defendants argue that this exception is actually two-fold. There is the "neighbor accommodation exception" which applies when a generally friendly neighborhood attitude exists, and it should be implied that they give permission to let others cross their land. Additionally, there is the "wild and unenclosed lands" exception, such as was discussed in *Maestas*. While it is true that New Mexico courts have equated the two con-

cepts, perhaps confusingly, *see Scholes*, 115 N.M. at 412, 852 P.2d at 685 (referring to "the neighbor accommodation exception concerning open and unenclosed lands"), a fuller discussion of them is unnecessary here. There is substantial evidence to support the trial court's finding that the use was permissive, without the need to resort to these presumptions.

or notorious. A review of our cases, as well as consideration of the Restatement, demonstrate this. Open or notorious use is the only way that knowledge can be imputed to the landowner. *See, e.g., Silverstein v. Byers,* 114 N.M. 745, 748, 845 P.2d 839, 842 (Ct.App.1992). Imputed knowledge is synonymous with constructive notice, a phrase that means that the use of the property must have been so obvious that the landowners should have known about it, had they been reasonably diligent. *Taylor v. Hanchett Oil Co.,* 37 N.M. 606, 609, 27 P.2d 59, 60 (1933).

{19} The Restatement simplifies or rationalizes the definition of a prescriptive easement by acknowledging that these terms are all part of the same requirement. *See Restatement, supra,* § 2.17(1). *See also* 7 *Thompson on Real Property, Thomas Edition* § 60.03(b)(6)(vi), at 439 (David A. Thomas ed., 1994) (stating that the historical development of prescriptive easement law has led to a "melange of redundant terms"). The use must simply be either open or notorious. To be open, the use must be visible or apparent. *See Restatement, supra,* § 2.17 cmt. h. This has long been the law of this State. *See Silverstein,* 114 N.M. at 748, 845 P.2d at 842 (holding that frequent use of a road was so plainly apparent that the requirement of open and notorious use was satisfied); *Maestas,* 50 N.M. at 280, 175 P.2d at 1006 (1946) (holding that use of a relatively narrow strip of land, adjacent to the landowner's residence, in the presence of the landowner satisfied this requirement). To be notorious, the claimant's use of the property must be either actually known to the owner or widely known in the neighborhood. *Restatement, supra,* § 2.17 cmt. h. This, also, is consistent with our cases. *See Cunningham v. Otero County Elec. Coop., Inc.,* 114 N.M. 739, 742–43, 845 P.2d 833, 836–37 (Ct.App.1992) (holding that when landowner actually saw a power line, *the open and notorious requirement* was satisfied).[3]

{20} In this case, the trial court did not make a specific finding of fact with regard to open or notorious use. The trial court did find, however, that non-residents and outsiders who used Elfego Road were "not readily distinguishable from the property owners and their guests and invitees." There was testimony at trial that would tend to support this finding. Further, credible evidence was presented that the Sutin Defendants had no actual notice or knowledge of any unauthorized use of the property. One person testified that it would take him 30 seconds to one minute to cross the Sutin property. Such a brief amount of time certainly supports the conclusion that the use was not open, which means visible or apparent. This is not to say that a brief amount of time will always preclude a finding that the use was open or notorious. It is only a factor to consider, along with all of the facts, such as the heavily wooded nature of the property, and the indistinguishability of the public and neighbors and their guests.

{21} In contrast, the Alleys concede that they saw three Plaintiffs occasionally traversing the claimed easement. However, the trial court found that those members of the public the Alleys saw were difficult to distinguish from the friends, relatives, and other invitees of those who live on Elfego Road. This finding is consistent with the evidence that numerous property owners other than the Alleys and the Sutins live on Elfego Road. Obviously, if it was difficult for the Alleys to distinguish between these people, and the Alleys were residents of the area, it would have been even more difficult for the Sutins, who were non-residents. The Sutins testified that only one of them visited the property once during the entire prescriptive period. This may not have been diligent on their part, but that is not what we must decide. Rather, we must decide whether, even if the Sutins had been diligent, knowledge should not be imputed to them. Evidence of the difficulty the Alleys experienced in this regard is instructive. We cannot say that the trial court could not have rationally

---

**3.** The Restatement uses the terms "open" and "notorious" in the disjunctive ("open *or* notorious"), while our cases have repeatedly used them conjunctively ("open *and* notorious"). We agree with the Restatement view that the former is more accurate, because a finding that the use of the property was *either* actually known to the landowner, *or* it should have been apparent to the landowner will suffice to satisfy this requirement.

found that the Alleys exercised reasonable diligence, but still could not distinguish between property owners and members of the public. It follows that the Sutins may have had the same difficulty even if they had been more vigilant.

{22} Based on all of this evidence, we believe that the trial court could have rationally concluded that knowledge should not have been imputed to Defendants. It follows that the trial court could have concluded that Plaintiffs had not proved open or notorious use by clear and convincing evidence. The use *by the public* was not apparent, and it was not of such a character that it was widely known in the neighborhood.

**C**

{23} In order to prevail in their claim, Plaintiffs must have also proven that their use was continuous and uninterrupted. *Village of Capitan,* 96 N.M. at 525, 632 P.2d at 1163. Although not synonymous, these two terms are interrelated parts of the same requirement. *See Restatement, supra,* § 2.17(2), at 260. For the use to be continuous, it must take place with the same consistency that a normal owner of the claimed servitude would make, so long as that use is reasonably frequent. *Maloney v. Wreyford,* 111 N.M. 221, 224, 804 P.2d 412, 415 (Ct.App. 1990) ("Continuity is to be determined in relation to the right claimed, and is sufficient if the property is used whenever needed, if it is reasonably frequent."); *Restatement, supra,* § 2.17 cmt. i. The requirement that the use be uninterrupted, however, refers to the actions of the prospective servient owner. If the owner takes any action that stops the claimants' use of the property, this will defeat the claim. The owner's actions could be physical, such as blocking access to the property, or legal, such as bringing an action for ejectment. *Maloney,* 111 N.M. at 224, 804 P.2d at 415. Of course, if the landowner effectively interrupts the claimants' use of the property, this will have the effect of breaking the continuity of the use as well.

{24} Plaintiffs claim that the trial court actually found that they did use the claimed easement continuously during the prescriptive period. In its findings of fact,

the trial court stated that "from May, 1985, or before, to May 31, 1995, Plaintiffs and others have traveled upon or crossed Elfego Road from the Duranes Lateral to the Sutin bosque tract and across the Sutin bosque tract. . . ." For the most part, Defendants do not dispute this. The Alleys do point out, however, that they fenced off their driveway in 1992 or 1993, and this forced anyone wishing to cross from Elfego Road to the River park to travel along the Sutin property instead. The Alleys claim that they interrupted the use of the claimed easement at that time. However, all this action did was shift slightly the path of travel that Plaintiffs took. Thus, it was not an "effective" interruption.

{25} This leads us to consider another aspect of continuity. Plaintiffs must show that the *location* of the alleged easement did not change during the prescriptive period. *Hester,* 41 N.M. at 506, 71 P.2d at 652 (1937) ("A way claimed by prescription must be a definite, certain, and precise strip of land. . . . To acquire a prescriptive right of way by consent and uninterrupted use, the use must relate strictly to the identical land over which the right is claimed." (internal citations and quotations omitted)). *See also Jicarilla Apache Tribe v. Bd. of County Comm'rs,* 116 N.M. 320, 334, 862 P.2d 428, 442 (Ct.App.1993), *rev'd on other grounds,* 118 N.M. 550, 883 P.2d 136 (1994) ("In defining the boundaries of the road, the court should refer to fixed and obvious landmarks, or order that a survey be done and refer to that survey, or use some other, similarly definite method of locating the road."). The trial court found that this element was lacking. Plaintiffs' counsel was not able to provide dimensions or a location for the easement, but simply left it up to the court to use its "power in equity" to make this determination. If all of the other elements of a prescriptive easement were satisfied, we could remand to the trial court to make this determination. *See, e.g., Cunningham,* 114 N.M. at 744, 845 P.2d at 838 (Ct.App.1992). In view of our conclusions as to other elements, however, remand will not be appropriate in this case.

**III**

{26} Defendants also argue that Plaintiffs' claim must fail because they claim

that a prescriptive easement can never exist if its sole purpose is for recreation or the convenience of those who use it. We need not decide this issue because we affirm the trial court on other grounds. We note, however, that there is no support in our cases for such a rule, and the arguments in this case provide no policy basis to create one. Similarly, we need not address Defendants' argument that the creation of a public prescriptive easement would amount to an unconstitutional taking of private property without just compensation, although we note that no government entity is a party to this lawsuit, and it would therefore be impossible to decide *who* should pay such compensation. *Schlieter v. Carlos,* 108 N.M. 507, 510, 775 P.2d 709, 712 (1989) ("It is an enduring principle of constitutional jurisprudence that courts will avoid deciding constitutional questions unless required to do so.") The general rule is that acquisition of an easement by prescription is not a taking and does not require compensation to the landowner. *Luevano v. Maestas,* 117 N.M. 580, 587, 874 P.2d 788, 795 (Ct.App.1994). *But see Pascoag Reservoir & Dam, LLC v. Rhode Island,* 217 F.Supp.2d 206, 217–27 (D.R.I. 2002).

## IV

{27} The trial court's conclusion that Plaintiffs failed to prove the elements of a prescriptive easement by clear and convincing evidence was a rational determination. For this reason, we conclude that the trial court did not err in its judgment that neither Plaintiffs nor the general public have any prescriptive easement rights in the property at issue in this case. We therefore affirm the judgment of the trial court.

{28} **IT IS SO ORDERED.**

PATRICIO M. SERNA, Chief Justice, GENE E. FRANCHINI, PETRA JIMENEZ MAES, and PAUL J. KENNEDY, Justices.