This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**FRATERNAL ORDER OF POLICE**
**ALBUQUERQUE LODGE NO. 1**
**a New Mexico not-for-profit corporation,**

Plaintiff-Appellee,

**and**

**LUJAN BYRD GENERAL PARTNERSHIP,**

Involuntary Plaintiff,

v.                                                            **NO. 30,900**

**ALVARADO ENTERPRISES, INC., a**
**California general partnership,**

Defendant-Appellant,

**and**

**MIDEB, LLC,**

Defendant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Theresa M. Baca, District Judge**

Leverick & Musselman, LLC
Richard Leverick

Albuquerque, NM

for Appellee


Moses, Dunn, Farmer & Tuthill, P.C.
Joseph L. Werntz
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

Plaintiff, the Fraternal Order of Police Albuquerque Lodge No. 1 (the FOP), brought suit seeking to establish an easement by prescription on a driveway located on neighboring properties owned by Alvarado Enterprises (Defendant) and MIDEB, LLC.[1]  The district court determined that the FOP established the elements of a prescriptive easement by clear and convincing evidence.  We hold that the district court erred in determining that the FOP established the element of adversity required for the creation of a prescriptive easement.  We reverse and remand for further proceedings consistent with this Opinion.

**BACKGROUND**

---

[1]Although a portion of the driveway is located on MIDEB, LLC's property, it is not a party to this appeal.  In the district court proceedings, the parties entered into a stipulation that MIDEB, LLC was excused from participating in the trial and that it would abide by any decision reached by the district court.  Accordingly, Alvarado Enterprises is the sole Defendant-Appellant in this case.

The underlying facts of this case date back several decades and thus, for purposes of our discussion, we provide the relevant facts in terms of the following time periods: 1960-1980 and 1981-2007.

**A.    1960-1980**

The FOP's ownership of its property dates back to 1960 when the FOP first acquired title to a portion of its property from Defendant's predecessor-in-interest, Albert G. Simms. At the time of purchase, the FOP's property adjoined New Mexico State Road 422, or what is presently the southbound portion of the Frontage Road next to Interstate 25 in Albuquerque. Simms retained ownership of land immediately to the south of the FOP's property. The common boundary between the FOP and Simms property ran east and west.

In 1962, the FOP and Simms entered into a written agreement granting to Bernalillo County a highway easement across both of their properties (hereinafter, the 1962 Highway Easement). The agreement granted "an easement and right of way to enter upon and grade, level, fill, drain, pave, build, maintain, repair, and rebuild a road or highway . . . on, over, and across the land contained within the right of way" on the FOP and Simms properties. The easement ran along the common boundary between the two properties and abutted State Road 422, with the northern half of the easement located on the FOP's property and the southern half of the easement located on

Simms' property. The physical relationship between the properties following the 1962 Highway Easement is depicted in "Appendix 1," which is attached to this Opinion in order to assist the reader's understanding and not to define any legal rights or precise dimensions.

The Simms property remained vacant land until the 1980s. Based on aerial photographs and testimony presented at trial, the FOP developed and built lodge facilities on its property sometime during the early 1960s. The FOP presented substantial trial testimony that its facilities were used from the 1960s until 2008 on a routine basis for FOP-related events as well as various other functions by its members, employees, tenants, invitees, and others. This use will be described in greater detail in our analysis.

At trial, several witnesses testified that initial access to the FOP property occurred by traveling across a dirt road located off of State Road 422. The dirt road remained the only means of vehicular access to the FOP lodge facilities until Kircher Road NE, now Jefferson Street NE, was developed in 1970, and curb cuts were sometime thereafter installed on Kircher Road to allow access to the FOP property from the west. Even after Kircher Road was developed, however, the FOP continued to use the dirt road to access its property from State Road 422. In addition, the parties agree that the dirt road was generally in the same location as the "driveway" that the

FOP is seeking a prescriptive easement for in this case.

In 1977, the FOP and Simms exchanged quitclaim deeds that altered their respective property boundaries. The result of the deed exchange was that the FOP gained title to the land parcels that bordered Kircher Road while Simms gained title to the tracts that bordered the southbound lanes of State Road 422. As a result, the common boundary between the FOP and Simms' properties now ran north and south rather than east and west. Although the FOP no longer retained ownership of any land bordering State Road 422, the FOP, its guests, invitees, and tenants continued to use the dirt road—now located solely on Simms' land—to access its buildings from State Road 422.

**B.     1981-2008**

Sometime after the deed exchange between Simms and the FOP, the Simms property was sold. In September 1981, the City of Albuquerque, as the successor in interest to Bernalillo County, relinquished its interest in the 1962 Highway Easement by giving quitclaim deeds to the FOP and Simms' successor in interest. In March 1983, the City approved a site development plan for the property owned by Simms' successor in interest, then platted as "Lot D-4 of Albuquerque Industrial Park" and later, re-platted as "Parcel A." Construction of buildings on the portion presently known as Parcel A-2 was completed sometime between March 1983 and July 1985,

when a corporation owned by Michael Hansen purchased Parcel A. At a point thereafter, Parcel A was subdivided into two parcels presently known as Parcel A-1 and Parcel A-2, which were both further developed. Of specific relevance to this case, sometime during the development of these parcels, the area where the dirt road was historically located was paved and a drop down curb was installed on the parcels, with the dimensions of the drop down curb coinciding with a gate on the FOP's property where the dirt road had historically entered the FOP's property. The physical relationship between the FOP property and Parcels A-1 and A-2 is depicted in "Appendix 2," which is attached to this Opinion in order to assist the reader's understanding and not to define any legal rights or precise dimensions.

Alvarado Enterprises, Defendant in this lawsuit, is the current owner of Parcel A-2 and MIDEB, LLC is the owner of Parcel A-1. In 2007, the FOP filed the present action in district court, seeking an express easement, or in the alternative, a prescriptive easement for the driveway located on Parcels A-1 and A-2. At trial, the FOP abandoned its express easement claim and proceeded only on its prescriptive easement claim. After a three day trial, the district court ruled in favor of the FOP, holding that the FOP had established the elements of a prescriptive easement for vehicular access on the driveway. This appeal followed.

**DISCUSSION**

On appeal, Defendant contends that the judgment of the district court should be reversed because the district court erred in determining that the FOP acquired a prescriptive easement for the driveway. In New Mexico, "an easement by prescription is created by an adverse use of land, that is open or notorious, and continued without effective interruption for the prescriptive period []of ten years[]." *Algermissen v. Sutin*, 2003-NMSC-001, ¶ 10, 133 N.M. 50, 61 P.3d 176. "On appeal, we decide whether substantial evidence supports the district court's findings and whether these findings support the conclusions that the elements required to establish [an] easement by prescription were . . . proved by clear and convincing evidence." *Id.* ¶ 9. We review the district court's conclusions of law de novo. *See Bd. of Trustees of Tecolote Land Grant v. Griego*, 2005-NMCA-007, ¶ 7, 136 N.M. 688, 104 P.3d 554 (stating that in reviewing a determination of adverse possession, this Court reviews conclusions of law de novo).

Defendant raises four specific arguments on appeal: (1) the FOP failed to prove that its use of the driveway was adverse; (2) the FOP failed to establish continuous use for a ten-year prescriptive period and related to this point, (3) the district court's order failed to identify the specific years that constituted the ten-year prescriptive period; and (4) that a prescriptive easement is not necessary because the FOP has ample access to its property through alternative routes.

**1.      The District Court's Failure to Clearly Identify the Prescriptive Period**

We first address Defendant's argument that the district court erred by failing to identify a specific ten-year time period within which all of the elements of a prescriptive easement were satisfied. *Hester v. Sawyers*, 41 N.M. 497, 503, 71 P.2d 646, 650 (1937) (holding "that the period of use necessary to create an easement by prescription is ten years"); *see Algermissen*, 2003-NMSC-001, ¶ 10. Defendant contends that the district court erred by finding that all elements had been met for a period of thirty-three years without actually specifying the years that comprised this time period. In response to this argument, the FOP's answer brief is unclear in explaining which years comprised the prescriptive time period—contending first that its use of the driveway "began in the early 1960s and continues through today," then stating that its use has continued "[f]rom and after March . . . 1977 . . . to today's date" and finally that the prescriptive period began when the FOP lands were fenced in "around the same time [as] the exchange of lands with the Simms [e]state" or "from 1975 to the present date."

The FOP's ownership of its property traces back to 1960—a period spanning well over the thirty-three years referenced in the district court's order. However, the earliest evidence of use of the driveway presented by the FOP dates back to December 1964, the date that Gilbert Gallegos testified he became a member of the FOP and

began using the dirt road, which was already there, to access the FOP lodge. Although Greta Foote testified that the driveway had been used to access the FOP lands since the FOP lodge was built, the district court did not enter any finding as to when the lodge was built.

We agree with Defendant that the district court's order failed to specify the year that the prescriptive time period commenced—whether it was in 1964, or some time before or after this year. Instead, the district court's order adopted verbatim a number of the FOP's proposed findings regarding the FOP's use of the driveway over the years, including the following:

30. *On and after March 1977* when [the FOP] and . . . Simms . . . exchanged land through an exchange of deeds, [the FOP] . . . ha[s] used the drive[]way located on Parcels A-1 and A-2 . . . for vehicular access to get to and from the FOP [l]ands.

31. Said use has been continuous.

32. Said use has been open.

33. Said use has been notorious.

. . . .

35. Said use has been without effective interruption by owners of the servient estate, Parcels A-1 and A-2.

. . . .

57. *Over the 33 years* of open, notorious, continuous, peaceable and adverse use of the private access driveway on which the

9

prescriptive easement is claimed[.]

(Emphasis added.) From these findings, it appears that despite the evidence of use of the driveway dating back to the 1960s, the district court determined that the elements for a prescriptive easement were met "on and after March 1977" when the FOP and Simms exchanged quitclaim deeds. Thirty-three years from March 1977 would be approximately 2010, the year that this case went to trial.

Although it seems at initial glance that the district court determined the prescriptive time period began in March 1977 and ran for thirty-three years, the district court adopted other findings proposed by the FOP that call this time period into question. These findings concerned the construction of a drop down curb on Defendant's property at the location where the driveway had historically entered the FOP's property. The district court found that the curb was not evidence of permissive use because "[t]he paving of the drop down curb occurred at a time when the use of the private driveway, for vehicular [access] to and from the FOP [l]ands, was occurring, was open, was adverse, and *was under claim of right of a prescriptive easement*." (Emphasis added.) Based on this italicized language, the district court appears to also have determined that the FOP had *already* acquired an easement by prescription by the time the drop down curb was paved. Because the paving of the

10

curb may have occurred by 1985,[2] it is possible to interpret the district court's order as having recognized a ten-year prescriptive period that began prior to March 1977.

Viewing the district court's order in its entirety, we are therefore unable to state with any degree of certainty which years comprised the thirty-three year prescriptive period. The district court's failure to clearly specify the prescriptive period resulted in this Court having to conduct a lengthy review of the entire record, including all of the trial transcripts as well as the exhibits, in order to trace the FOP's use of the driveway over several decades and address Defendant's remaining argument. Our task was somewhat complicated by the FOP's failure to follow the citation and briefing rules provided by our Rules of Appellate Procedure. Although we ultimately conclude that the issue of adversity is dispositive on appeal, we nevertheless express our difficulty with the district court's failure to specify the years that comprised the thirty-three year prescriptive period.

**2.     The District Court's Determinations Regarding Adverse Use**

We now turn to consider Defendant's primary argument on appeal, which is that the district court erred in finding that the FOP established adverse use of the driveway. An adverse use in the context of prescriptive easement cases is "a use made without the consent of the landowner" and "the type of use that would normally give

---

[2]As we explain later in this Opinion, the district court's order is unclear as to which year the drop down curb was installed. *See* Op. p. 21.

11

rise to a cause of action in tort." *Algermissen*, 2003-NMCA-001, ¶ 11. In *Algermissen*, our Supreme Court noted that it may be difficult in many cases to prove adversity due to the passage of time. *Id.* Therefore, the Court stated, a series of presumptions can be employed by the fact finder when deciding whether a use was adverse or permissive in nature. *Id.*

One such presumption involves evidence of permission granted by the landowner. Specifically, our Supreme Court stated in *Algermissen* that "a use that has its inception in permission will be presumed to continue to be permissive, until a distinct and positive assertion of a right hostile to the owner is brought home to him by words or acts." *Id.* (internal quotation marks and citation omitted). The Court further indicated that a landowner is not required to present evidence demonstrating that he or she gave "express permission" to defeat a prescriptive easement claim; evidence of implied permission is sufficient. *Id.* ¶ 12. Thus, "if a use has its inception in permission, express or implied, it is stamped with such permissive character and will continue as such" until the claimant asserts a right hostile to the owner by words or acts. *Id.*; *see also Hester*, 41 N.M. at 505, 71 P.2d at 651 (stating that "[a] prescriptive right may be acquired, although the use was originally permissive, if in fact it [later] became adverse" through "a distinct and positive assertion of a right hostile to the owner [that] is brought home" to the owner by claimant's words or

12

actions).

In this case, Defendant specifically contends that the FOP's use of the driveway was permissive from its inception based on the 1962 Highway Easement, and that following the termination of the highway easement in 1981, the use of the driveway remained permissive based on evidence of a drop down curb on Defendant's property at the point where the driveway historically entered the FOP's land. Defendant further contends that the FOP failed to say anything or take any action following the 1977 deed exchange between Simms and the FOP or the 1981 termination of the highway easement that alerted Defendant or earlier owners of Parcels A-1 and A-2 that its use of the driveway was intended to be hostile to their rights. *See Hester*, 41 N.M. at 505-06, 71 P.2d at 652 ("If permissive in its inception, . . . no adverse user can arise until a distinct and positive assertion of a right hostile to the owner, and brought home to him, can transform a subordinate and friendly holding into one of an opposite nature[.]"). We address these arguments in turn.

**A.     Whether the 1962 Highway Easement Resulted in Permissive Use**

The district court rejected Defendant's proposed finding that by signing the 1962 Grant of Highway Easement, Simms and the FOP gave express permission to the public to travel across their properties. We begin by interpreting the language of the 1962 Highway Easement in order to determine whether it granted express

permission for the FOP to use the dirt road located within the easement.[3]  The nature of an express easement "and its corresponding scope are determined according to the intent of the parties." *Dethlefsen v. Weddle*, 2012-NMCA-077, ¶ 12, 284 P.3d 452 (internal quotation marks and citation omitted).  In discerning the parties' intent, "we place heavy emphasis on the parties' written expressions." *Id.*  (alterations, internal quotation marks, and citation omitted).  "Unlike contract construction, the written language of an easement should be conclusive, and consideration of extrinsic evidence is generally inappropriate.  If, however, the grant or reservation is ambiguous, the parties' intention must be determined from the language of the instrument as well as from the surrounding circumstances." *Id.* ¶ 12 (alterations, internal quotation marks, and citations omitted).

On appeal, the parties do not dispute that the 1962 Highway Easement was an express grant of an easement across land on the FOP and Simms' property that is at issue in this case. We agree that this is clear from the terms of the instrument:  after all, the agreement was titled "Grant of Highway Easement" and explicitly stated that the FOP and Simms granted to the County "an easement and right of way to enter

[3]The parties stipulated below that the driveway over which the FOP is claiming an easement by prescription is generally in the same location as it was in the 1960s. In addition, the parties do not dispute that the driveway, and the dirt road that existed prior to the paving of the driveway, were both located within the boundaries of the 1962 Highway Easement.

upon and grade, level, fill, drain, pave, build, maintain, repair, and rebuild a road or highway . . . on, over, and across the land contained *within the right of way*" described therein. (Emphasis added.) In light of the parties granting this type of easement and then specifically describing tracts of land within this "right of way," we can reasonably conclude that the intent of the parties was to allow the general public to access and traverse their property from State Road 422. *See Black's Law Dictionary* 1440 (9th ed. 2009) (defining "right-of-way" as "[t]he right to pass through property owned by another"). The effect of the 1962 written instrument was the granting of express permission to all members of the public, including the FOP, to use the land reserved by the easement for vehicular access to and from State Road 422.

We are not convinced by the FOP's arguments to the contrary. The FOP contends that the 1962 Highway Easement was specifically for the purpose of building a public road or highway, and that the County failed to build a road. As evidentiary support, the FOP cites to aerial photographs of the FOP and Simms properties during the years 1964-1982 as well as the testimony of James Lehner, a FOP member. We disagree with the FOP that this evidence shows that the County failed to build or maintain a road; the aerial photographs show only that a dirt road existed in the area reserved by the 1962 Highway Easement, and Lehner only testified that he used the dirt road for access to the FOP lodge. In fact, our review of the record shows that

aside from aerial photographs and testimony by various FOP members regarding use of the dirt road over the years, no evidence was presented below regarding the construction of the dirt road or the entity that was responsible for building and/or maintaining the dirt road. In addition, no evidence was presented regarding the County's actions, or lack thereof, with respect to the 1962 Highway Easement during the years that the easement remained in place. Thus, we are unable to conclude that the record supports the FOP's assertion on appeal that the County failed to build a public road in the area reserved by the 1962 Highway Easement. As a result, we also do not reach the FOP's related argument, based on the reversionary language of the 1962 Highway Easement, that the County's failure to build a road resulted in an abandonment or release of the easement and the land therein reverted to the owners.

Moreover, we think that the critical inquiry is not whether the County actually built a public road or highway, but what the grantors—the FOP and Simms—*intended* by executing the 1962 Highway Easement. As we have reasoned above, the intent of the parties was to grant an easement over a portion of their properties for use by the general public as a right of way from State Road 422. We think it is unreasonable that Simms would have granted an express easement for a right of way on his property—thereby granting permission for the public to access and traverse the land in the easement area from State Road 422—but not have intended for the FOP to have

16

this same type of permissive access.

Our Supreme Court has recognized that an easement by prescription cannot generally be acquired where the claimant's use is in common with and similar to that of the general public. *See Martinez v. Mundy*, 61 N.M. 87, 95, 295 P.2d 209, 214 (1956) (holding that an easement by prescription could not be acquired where the appellant's use of roads on the landowner's property was in "common with and similar to that of the general public"), *overruled on other grounds by Evans Fin. Corp. v. Strasser*, 99 N.M. 788, 665 P.2d 986 (1983); *see also Garmond v. Kinney*, 91 N.M. 646, 647, 579 P.2d 178, 179 (1978) (determining that a prescriptive easement could not be acquired where the claimant's use of a roadway was in common with use by the general public and a campfire girls group). The FOP argues, however, that its use of the dirt road remained adverse during the years that the 1962 Highway Easement remained in place because its use was essentially distinct from the public and "did not depend in any way on the presence or absence of the rights of others." We recognize that authority exists for the proposition that a claimant can establish adverse use even when its use is in common with the public. *See Castillo v. Tabet Lumber Co.*, 75 N.M. 492, 496, 406 P.2d 361, 363 (1965) (holding that the claimant had established a prescriptive easement even though her use of a road was in common with the general public because her right was not dependent upon a similar right in others and was "not

affected by the fact that others used the same roadway for their own purposes"). However, in this case, the FOP failed to present any evidence showing that its use of the dirt road was distinct or independent from the use intended for the general public under the 1962 Highway Easement. We therefore conclude that the district court's findings and conclusions on the matter were not supported by substantial evidence.

Finally, the FOP argues that its acts of building a fence and gate across the dirt road in the 1970s were distinct and positive assertions of a right hostile to then-owners of Parcels A-1 and A-2 and thus, effectively interrupted the permissive use of the dirt road. We disagree. We have previously recognized that evidence of a gate across a claimed easement is not conclusive evidence of whether a use was permissive or adverse in nature. *See Silverstein v. Byers*, 114 N.M. 745, 748, 845 P.2d 839, 842 (Ct. App. 1993). More importantly, as Defendant points out, the fence and gate were installed solely on the FOP's property and therefore, the FOP's actions were not sufficient to alert Defendant's predecessors in interest that the FOP was asserting a hostile right on their property. Moreover, we observe that at least two FOP members testified at trial that there were discussions with Simms concerning the FOP's continued use of the dirt road following the 1977 deed exchange. Specifically, Manuel Crespin and Gilbert Gallegos both testified that at a membership meeting around the time of the 1977 deed exchange, the FOP's realtor stated that Simms would

18

allow the FOP to continue to use the dirt road to access their property. Thus, even after the fence and gate were installed on the FOP's property, there was evidence that the FOP continued to use the driveway in a permissive manner. Based on the foregoing, we conclude that the district court's findings and conclusions were not supported by substantial evidence. To the extent that the district court found adverse use prior to 1981, we reverse the district court's ruling.

**B. Whether There Was Evidence of Permission Following Extinguishment of the 1962 Highway Easement**

Having concluded that the FOP could not have established an easement by prescription prior to 1981, we turn to consider whether the FOP proved all of the elements for an easement by prescription for a ten-year period after the 1962 Highway Easement was extinguished in 1981. *See Castillo*, 75 N.M. at 494, 406 P.2d at 362 (providing that a prescriptive easement right "may arise even though [the use] was originally permissive, if it subsequently became adverse and the adverse use continued for a full ten years"). Defendant argues that the FOP's use remained permissive due to the construction of a drop down curb on Defendant's property at the point where the dirt road historically entered the FOP's property and where the gate is now located.

The district court rejected Defendant's proposed finding that the drop down curb was evidence of implied permission and instead entered the following findings

regarding the curb:

> 43. There was no testimony regarding the reasons for the then owner constructing this drop down curb where the private driveway abuts the FOP [l]ands.

> 44. The drop down curb is not evidence of the granting of permission to the [FOP] . . . to use the private driveway for vehicular access.

> 45. The paving of the drop down curb occurred at a time when the use of the private driveway, for vehicular [access] to and from the FOP [l]ands, was occurring, was open, was adverse, and was under claim of right of a prescriptive easement.

We conclude that the district court erred in concluding that the drop down curb, under the facts of this case, was not evidence of implied permission.

Defendant presented photographs of the drop down curb which show that the drop down curb was installed on its property to coincide with the gate on the FOP's property while the remainder of the boundary line between both properties had a standard curb. Our review of this documentary evidence leads us to conclude that the purpose of the drop down curb was to allow vehicular passage to and from the FOP's property. *See Kirkpatrick v. Introspect Healthcare Corp.*, 114 N.M. 706, 711, 845 P.2d 800, 805 (1992) ("When the resolution of the issue depends upon the interpretation of documentary evidence, this Court is in as good a position as the trial court to interpret the evidence."). In addition, both the FOP's and Defendant's experts agreed at trial that the purpose of the drop down curb was to allow vehicular access.

Plaintiff's expert testified that the purpose of the drop down curb was to "provide access to the properties," and Defendant's expert, similarly testified that the sole purpose of the curb was "to allow the passage of vehicles." We conclude that the drop down curb installed by the then-owner of Parcels A-1 and A-2 was an act consistent with permission for the FOP to continue to use the driveway, as there was no reason presented at trial for the drop down curb to exist at that specific location other than to let vehicles pass onto and off of the FOP's property, where a regular curb would have prevented such ingress and egress. *See Algermissen*, 2003-NMSC-001, ¶¶ 14-15 (holding that although there was no evidence of express permission, there was evidence of acts by the defendants that were consistent with permission, such as that the plaintiffs would wave hello and stop and chat with the people who lived in the area as they crossed over the defendants' property).

Although we conclude that the drop down curb was evidence of continued permission for the FOP to use the driveway, the record is unclear as to when the drop down curb was installed on Defendant's property. As a result, we are unable to determine whether there was a gap of ten years between 1981 and the year that the drop down curb was installed during which the FOP could have established all elements of a prescriptive easement. The district court specifically found that the drop down curb was constructed when the driveway was paved, which it determined

21

occurred when "*the land comprising Parcel A-1* was purchased and developed" "[s]ometime after . . . 1977." (Emphasis added.) It is unclear whether this finding referred to Michael Hansen's purchase of "Parcel A" in July 1985, which included the land comprising both Parcels A-1 and A-2, or whether it referred to Steve Taylor's purchase of Parcel A-1 in 1989 after Hansen subdivided the property into Parcels A-1 and A-2, and sold Parcel A-1 to Taylor. Based on our review of the record, a finding that the driveway was paved after Taylor's purchase in 1989 is not supported by substantial evidence. Steve Taylor testified at trial that the southern portion of Parcel A-1, i.e., the portion that contained the driveway, was already paved at the time that he purchased the property in 1989. Taylor further testified that his property was not developed until 1991 or 1992, which would be more than ten years after the 1962 Highway Easement was extinguished.

This Court has previously emphasized that "[f]indings of fact and conclusions of law are insufficient to assist a reviewing court if they do not resolve the material issues in [a] meaningful way." *Montoya v. Medina*, 2009-NMCA-029, ¶ 5, 145 N.M. 690, 203 P.3d 905 (internal quotation marks and citation omitted). Because it is possible that the FOP could have established all the elements for a prescriptive easement between 1981 and when the drop down curb was installed, we are unable to resolve this matter on appeal. We therefore remand for the district court to enter

findings as to when the drop down curb was installed on Defendant's property. If the district court determines that a gap of ten years exists, we direct it to consider whether the FOP established the elements of a prescriptive easement during that specific time period.

**CONCLUSION**

Based on the foregoing, we reverse the district court's ruling and remand for further proceedings consistent with this Opinion.

**IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**CYNTHIA A. FRY, Judge**



Appendix 1

24



Appendix 2

25